## 54135. CORNETT v. AGEE.

DEEN, Presiding Judge.

1. The sole question here is whether one may be liable for damage caused to a neighboring yard in an urban area by reason of the fall of a pine tree growing on one's own lot, where (a) the fall is apparently due to a combination of high winds and visible rot in the tree trunk from which it appears to be in a partially dead condition, (b) the tree is 75 to 100 feet tall, standing near the lot line, and leaning visibly toward the neighboring yard, and (c) the situation has been called to the owner's attention with advice to remove it.

There is evidence to support each of the above statements of fact, although some of it is contradicted. The defendant appellant resists the judgment entered against him after a bench trial on a well established principle of common law expressed in Prosser, Law of Torts (4th Ed.), p. 354: "The one important limitation upon the responsibility of the possessor of land to those outside of his premises has been the traditional rule of both the English and the American courts, that he is under no affirmative duty to remedy conditions of purely natural origin upon his land, although they may be highly dangerous or inconvenient to his neighbors." This rule was applied in *Roberts v. Harrison,* 101 Ga. 773 (28 SE 995), where an adjacent landowner was sued in nuisance for accumulations of water on his land emitting "noxious and deleterious gases . . . injurious to the public health" and it was held that, if the owner had not by his own act contributed to that result he could not be held liable, since the evil arose from natural causes, regardless of the relative ease with which he could cure it in comparison with the harm done by its continuance. On the other hand, however, Prosser disapproves the application of the rule of nonliability for natural conditions (obviously a practical necessity in rural areas in early days) to urban situations where both the danger and its consequences are generally apparent. He states (id., p. 355): "This is well illustrated by the cases of dangerous trees. It is still the prevailing rule that the owner of rural land is not required to inspect it to make sure that every tree is safe, and will not fall over

into the public highway and kill a man, although there is already some little dissent even as to this, and at least if the defendant knows that the tree is dangerous he will be required to take affirmative steps. But when the tree is in an urban area, and falls into a city street, there is no dispute as to the landowner's duty of reasonable care, including inspection to make sure that the tree is safe. The cases of trees therefore suggest that the ordinary rules as to negligence should apply in the case of natural conditions, and that it becomes a question of the nature of the locality, the seriousness of the danger, and the ease with which it may be prevented." The subject is discussed in Nuisances From Land in Its Natural Condition by Noel, 56 Harvard L. Rev. 772, 787, in which the author citing cases where recovery has been had from the falling of trees and branches on adjacent land, concludes that a "duty to take steps to protect an adjoining landowner is more definitely indicated in the few American decisions on the matter." It is stated in 2 CJS 50, Adjoining Landowners, § 51: "A landowner who knows that a tree on his property is decayed and may fall and damage the property of an adjoining landowner is under a duty to eliminate the danger, even if the tree grew on and became part of the land by natural condition," citing Rowe v. McGee, 5 N. C. App. 60 (168 SE2d 77); Dudley v. Meadowbrook, Inc., (D. C.) 166 A2d 743; Fabbri v. Regis Forcier, Inc., (R. I.) 330 A2d 807.

This is in accord with what is called one of the most important and best-proved laws in science, "The Second Law of Thermodynamics," or energy decay. The court can take judicial notice of anything in the scientific world scientifically provable. *Rome R. &c. Co. v. Keel,* 3 Ga. App. 769 (60 SE 468). This law tells us that all in the universe, trees, human beings, plants, animals, buildings and all else are headed downward from complexity to simplicity toward decay, deterioration, decadence, and death. See, "In the Game of Energy and Thermodynamics You Can't Even Break Even," by Isaac Asimov, Journal of the Smithsonian Institute (June, 1970), p. 6-8. This means while there is energy being converted, none is created or destroyed (Law of Thermodynamics Number One) nevertheless everything tends toward decay; for example,

a tree decaying, which is an increase of entropy or uselessness. We are specifically limiting liability in this case to patent visible decay and not the normal usual latent micro-non-visible accumulative decay. In other words, there is no duty to consistently and constantly check all pine trees for non-visible rot as the manifestation of decay must be visible, apparent, and patent so that one could be aware that high winds might combine with visible rot and cause damage.

Liability on the part of the defendant was found by the trial judge based on the above authority. We agree with him that under the conditions stated, including notice of the condition of the tree and the urban neighborhood, this disposition of the case was correct.

2. The evidence supported the judgment in the amount rendered, based on testimony of the difference in market value before and after the subsidiary structure was struck by the tree. This, rather than replacement value, was the proper measure of damages in this case.

*Judgment affirmed. Webb and Marshall, JJ., concur.*

ARGUED JULY 6, 1977 — DECIDED JULY 12, 1977 — REHEARING DENIED JULY 27, 1977.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Albert C. Ruehmann, III,* for appellant.
*Kirby G. Bailey,* for appellee.

ON MOTION FOR REHEARING.

The appellant cites *Harrison v. Kiser,* 79 Ga. 588 (8) (4 SE 320) to the effect that where an injury is done the plaintiff's house (as opposed to his land) the proper measure of damages is "whatever sum it would require to put the house in the condition in which it was before it was injured," and not the difference in value before and after the injury. Frequently the two measures of damage are in evidence and are of substantially the same monetary value. *Harrison* refers to an injury to a house by removal of lateral support, a remediable defect. In the present case

the structure was totally destroyed and the testimony was that it had a "negative value," that is, it would cost more to remove the debris than the salvage was worth. In *Mercer v. J. & M. Transportation Co.*, 103 Ga. App. 141 (2) (118 SE2d 716) where a similar charge was given and a similar objection made, the court, considering the differences between before and after value and cost of restoration of a building *which could not be repaired* because of the extent of destruction, held that to set the damages at replacement cost would "to our minds be ridiculous" as demanding an inflated measure of damages. We find no error, where the subsidiary structure was totally destroyed, in laying the damages in terms of market value before and after the loss.

*Motion for rehearing denied.*