A97A2594. WADE et al. v. HOWARD et al.
(499 SE2d 652)

SMITH, Judge.

This appeal presents the question of a landowner's liability for fatal injuries caused by a falling tree. Following the three leading cases of *Carter v. Ga. Power Co.*, 204 Ga. App. 77 (418 SE2d 379) (1992); *Willis v. Maloof*, 184 Ga. App. 349 (2) (361 SE2d 512) (1987); and *Cornett v. Agee*, 143 Ga. App. 55 (1) (237 SE2d 522) (1977), we affirm the trial court's grant of summary judgment in favor of the landowner's estate because the record demonstrates that the tree had no visible, apparent, or patent decay.

Plaintiff-appellants Gene E. and Nelsie I. Wade are the parents of Christopher Wade, and plaintiff-appellant Michael F. Barnsley is the father of Edward F. Barnsley. Christopher Wade and Edward Barnsley were killed by a tree that struck their car. The Wades and Barnsley ("plaintiffs") brought this renewal action in 1995 against James C. Howard as the executor and personal representative of Grace M. Nesbitt, deceased, and five employees of DeKalb County.[1] Summary judgment in favor of the county defendants was granted in February 1996, with plaintiffs' consent. Howard subsequently moved for summary judgment. Oral argument was heard in March 1997, and summary judgment was granted in Howard's favor in June 1997. This appeal followed.

---

[1] This action was a renewal of an earlier civil action dismissed without prejudice in 1995.

The underlying facts are undisputed. In June 1991, plaintiffs' decedents were traveling in a vehicle along Briarcliff Road in unincorporated DeKalb County during or immediately after a thunderstorm. As they passed Nesbitt's property, they were struck by a large tree that fell across the road. The tree stood on a seven- or eight-acre parcel owned by Nesbitt, since deceased. Nesbitt at the time of the incident was approximately 90 years old, was very ill and infirm, and had not lived on her property since 1988.

Howard presented evidence that Nesbitt had trees removed from her property from time to time during the 1980s. In October 1987 she hired a man to remove two trees that were dead or dying, apparently because they had been struck by lightning. At that time, Nesbitt asked a friend who was caring for her and seeing to her affairs to inspect her property for any other dead or diseased trees; he did so and found no other trees that needed cutting. This caretaker also testified that he looked at the trees along the roadway "many times" on later occasions as he walked Nesbitt's property at her request. He specifically testified that nothing about the tree in question appeared unusual. The base of the tree was over 20 feet from the roadway, behind a fence, and across a steep gully in a heavily overgrown area of the property. Before the tree fell, the base of the tree was invisible because it was covered with heavy overgrowth and vines. The tree grew towards the sun over the roadway "like many do on Briarcliff Road, hundreds of them." The caretaker observed the fallen tree while it was being cut up and there were no dead limbs on it; it was "just healthy on the outside, and this is what baffled everybody, you know." "So far as I could determine there was nothing visible that would have indicated . . . if you'd have gone up and looked at it close, . . . that it was [a] bad tree." No one ever notified him or Nesbitt of a problem with this particular tree, and if they had been notified they would have taken action.

Plaintiffs' original expert, retained at the beginning of this litigation, personally inspected the stump of the fallen tree within six months after the incident. He provided a letter to plaintiffs' original counsel stating that the tree was severely decayed and hollow at the base, but that "this internal defect would not have been readily apparent [to] an untrained casual observer." While he stated that the tree appeared to have leaned over the road, predisposing it to fall in that direction, he also stated that the tree leaned and had more branches on one side because it was an "edge tree" seeking sunlight over the roadway. He stated that "[a]ll 'edge trees' behave in this manner." Plaintiffs dismissed that expert and the attorneys who hired him. The earliest record of service of this expert's letter upon Howard is in 1994, in response to discovery propounded by the county defendants. The expert later provided Howard with an affida-

vit affirming the facts recounted in his 1991 letter.

Plaintiffs apparently waited until 1997 to retain a second expert, who executed an affidavit based on 81 photographs made of the scene in 1991 and 1993.[2] But the photographs were not attached to his affidavit or to the accompanying affidavit of plaintiff Gene Wade that purported to identify the photographs. While four unidentified photographs were attached to the expert's affidavit, he did not testify to their origin or that they were true and accurate representations of the scene depicted. Evidence was presented that the scene had changed substantially with the sale of the land and its clearing and regrading for a subdivision in 1996.

At the hearing on Howard's motion for summary judgment, Howard objected to the affidavits. Ten days later, plaintiffs sought to amend the affidavits by revising them to add "personal knowledge" language and the photographs, and Howard again objected. The trial court refused to allow amendment of the affidavits, and plaintiffs have not argued or enumerated as error the trial court's order denying their motion to amend the affidavits. This issue therefore is not raised on appeal, see *Schill v. A.G. Spanos Dev.*, 217 Ga. App. 260, 262 (457 SE2d 204) (1995), and we will not consider the amended affidavits or the photographs offered with them.[3]

With respect to the affidavits in their original form, it is well established that an affidavit purporting to rely on papers or other materials not attached to the affidavit or otherwise made part of the record is insufficient to create a genuine issue of fact on summary judgment. *Hayes v. Murray*, 252 Ga. 529, 530 (314 SE2d 885) (1984). The photographs purportedly identified in Gene Wade's affidavit were never successfully incorporated into the record because they were not submitted until plaintiffs' motion to amend, which was denied and not appealed. As a result, the four photographs attached to the second expert's affidavit remain unidentified as to time, place, or origin, and no witness has testified that they are true and accurate representations of objects or events *at the time of the incident.*[4] While the second expert recited that he had visited the scene, he did not identify the photographs from his personal knowledge or state any

[2] It does not appear from the affidavit that the expert was provided with either the deposition or the affidavit of the caretaker describing the condition of the property at the time of the incident.

[3] We note that "[w]hile the trial court is vested with discretion to consider affidavits not timely filed, the refusal to exercise that discretion is not error." (Citations and punctuation omitted.) *Professional Cleaners v. Phenix Supply Co.*, 201 Ga. App. 634, 636 (411 SE2d 781) (1991).

[4] Some of the photographs unsuccessfully offered in the motion to amend were taken over two years after the incident, a significant lapse of time in assessing the degree of rot or decay in a fallen tree.

facts based on his inspection of the site, which in any event had altered substantially with the clearing and grading of the land in the intervening years. The second expert's affidavit is fatally defective, as is the Wade affidavit which purported to identify unattached photographs not offered until plaintiffs' later, unsuccessful, and unappealed motion to amend. *Hayes*, supra.

Plaintiffs also presented the affidavit of a neighbor who testified she believed the tree was dangerous because it leaned over Briarcliff Road. She did not attribute her conclusion to observed rot or decay, but entirely to the fact that the tree was leaning. She also did not state that she ever notified Nesbitt or her caretaker of this belief.

The law governing a landowner's responsibility for trees is well-established. In *Cornett v. Agee*, supra, a tree fell due to an apparent combination of high winds and visible rot. The tree was partially dead, it was standing near the lot line and leaning visibly toward the neighboring yard, the landowner's attention had been called to the tree, and he had been advised to remove it. This Court recognized the prevailing rule that distinguishes between the owner of rural land and the owner of land in an "urban area," who is held to a standard of reasonable care in inspecting trees to ensure safety. Id. at 55-56. Under those circumstances, we limited liability to trees having "patent visible decay and not the normal usual latent micro-non-visible accumulative decay. In other words, there is no duty to consistently and constantly check all pine trees for non-visible rot as the manifestation of decay must be visible, apparent, and patent so that one could be aware that high winds might combine with visible rot and cause damage." Id. at 57.

In *Willis v. Maloof*, 184 Ga. App. 349 (361 SE2d 512) (1987), a jointly owned boundary tree fell on the defendant landowner's next-door neighbor. The defendant's vegetable garden was adjacent to the tree, and he had frequent opportunities to observe it. The plaintiff's expert testified that unusual bark growth, a cavity or hollow in the side of the tree, and fungus growth on the bark indicated to him that the tree was diseased and posed a hazard, and that in his opinion the average person's " 'attention would have been drawn' " to these conditions. Id. at 350 (2). Relying on *Cornett*, supra, for the proposition that the owner of a tree is liable for injuries from its fall "only if he knew or reasonably should have known the tree was diseased, decayed or otherwise constituted a dangerous condition," we held that "[e]ven assuming defendant should have noticed these conditions, no evidence was presented from which a jury could find that defendant should reasonably have known the tree was diseased. The expert witness presented testimony from which a jury could find that the tree was in fact diseased. However, the testimony of the expert witness did not establish that a layman should have reasonably

known the tree was diseased." Id. at 350.

Finally, in *Carter v. Ga. Power Co.*, supra, we cited *Willis* and *Cornett* to hold: "Just as the owner of a tree has no duty to check it constantly for non-visible rot, a city has no duty to check limbs overhanging a public road for non-visible rot." (Citations and punctuation omitted.) Id. at 78 (1).

In applying these decisions to the case before us, we first assume, without deciding, that undeveloped acreage in its natural state falls within the *Cornett* rule because it is located in the Atlanta metropolitan area, even though in an unincorporated area of a county.[5] We also assume that the rule applies to property on which the owner does not reside, and that the same standard of care applies to an ill and infirm landowner in her nineties. Even in light of all these assumptions, however, plaintiffs have failed to carry their burden of responding to Howard's motion for summary judgment.

"In response to a properly supported motion for summary judgment which pierces the pleadings, plaintiffs may not stand upon their allegations, but must come forward with evidence to contravene defendants' proof or suffer judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Bowden v. Pryor*, 215 Ga. App. 351, 352 (450 SE2d 845) (1994). Plaintiffs have failed to demonstrate patent visible decay in the tree before its fall. Their own expert witness testified that the decay would have been invisible to a layperson on inspection of the tree. Moreover, plaintiffs have not demonstrated that the decay would have been visible, apparent, or patent before the fall of the tree despite its inaccessible location and the heavy undergrowth and vines surrounding the tree's base.

The neighbor's lay opinion regarding the danger of a leaning tree in the absence of any decay was refuted by plaintiffs' own expert witness. Moreover, this Court has declined to use the fact that a tree may be overhanging or leaning in one direction as a basis for notice that it is in a dangerous condition. We rejected liability for an overhanging portion of a tree in *Carter*, supra. In *Cornett*, supra, the tree that fell was also leaning, but this Court noted that it was "specifically limiting liability in this case to patent visible decay. . . . [T]he manifestation of decay must be visible, apparent, and patent so that one could be aware that high winds might combine with visible rot and cause damage." Id. at 57. Plaintiffs have failed to meet this test, and the trial court did not err in granting summary judgment in favor of Howard.

---

[5] The tree in *Cornett*, supra, was a tree standing between two house lots in an urban area of Fulton County; the tree in *Willis*, supra, was a single tree in a side yard adjoining the defendant's vegetable garden; the tree in *Ga. Power* was a street tree within the city limits of Macon. But we need not reach the issue of what constitutes an "urban area" under *Cornett*.

Howard has moved for dismissal of the appeal and the award of penalties for a frivolous appeal under Court of Appeals Rule 15 (b). His motion to dismiss is denied, but his motion for frivolous appeal penalties is granted for the following reasons:

As noted above, plaintiffs began this litigation by replacing the attorney and expert witness who apparently advised them that their claims had no merit. Howard argues that plaintiffs "shopped" this case through a number of law firms. Although all plaintiffs are Atlanta residents, they eventually hired an attorney in Americus. Plaintiffs through their new counsel concealed the existence of the original expert's report from Howard for a substantial period of time; it was fortuitously revealed only when produced in response to the DeKalb County defendants' discovery.

Counsel never responded to Howard's interrogatories seeking facts supporting the essential elements of their claims and refused to respond to interrogatories regarding the expert's report after its belated discovery. No motion to compel was ever filed because Howard had no reason to pursue these matters after his summary judgment motion was granted.

As also noted above, plaintiffs' counsel filed inadequate affidavits without the described attachments on the day before a scheduled hearing on Howard's motion for summary judgment, which had already been postponed at counsel's request. He then attempted to amend the fatally defective affidavits ten days *after* the renewed hearing, which had been postponed again. As noted above, a second expert was not retained until years after the incident and only shortly before plaintiffs' response to Howard's motion for summary judgment. Counsel apparently limited the information provided to this second expert, omitting the caretaker's deposition and affidavit, apparently with a view towards influencing the expert's conclusions.

Plaintiffs' counsel also undertook a "shotgun" approach of suing every possible defendant. Claims were made against two automobile insurers, although no uninsured motorist claim appears to arise from the facts of this case. Plaintiffs also sued numerous employees of DeKalb County, but those claims ultimately were disposed of on summary judgment with plaintiffs' consent, *in return for the stipulation that DeKalb County would not seek costs, fees, or expenses.* There is no liability coverage because Nesbitt's insurer went into receivership.

There is also a persistent pattern of delay throughout this litigation. The original action was filed on the day before expiration of the statute of limitation. After the defendants filed motions for summary judgment, plaintiffs sought several extensions and then dismissed the original action without filing a response. The renewal action was filed two days before expiration of the six-month grace period. In this

renewal action, plaintiffs again sought additional time to respond to Howard's renewed motion for summary judgment, which was essentially identical to his original motion. Plaintiffs' counsel sought postponement of the summary judgment hearing three times.

Throughout the lengthy course of this action, plaintiffs have avoided stating a legal basis for their claims or the supporting facts until faced with an imminent ruling against them. While plaintiffs as laypersons may not have been informed of the controlling law or the substantial delay that occurred as a result of their counsel's conduct, it is clear that counsel was well aware from the inception of this litigation that these claims have no merit. We therefore assess frivolous appeal penalties pursuant to Court of Appeals Rule 15 (b) in the amount of $1,000 against plaintiffs' counsel.

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 2, 1998 —
RECONSIDERATION DISMISSED APRIL 3, 1998 —

*William J. Murray*, for appellants.
*Perry O. Lemmons*, for appellees.