2 P.3d 486 (2000)
101 Wash.App. 178
Dawn A. LEWIS and Darold Teitzel, Appellants,
v.
Gary and Nancy KRUSSEL, husband and wife, Respondents.
No. 24599-0-II.
Court of Appeals of Washington, Division 2.
June 16, 2000.
*487 John Dore Schumacher, Aberdeen, for Appellants.
R. Alan Swanson, Swanson, Parr, Cordes, et al., Olympia, for Respondents.
SEINFELD, J.
During a windstorm, two large healthy hemlock trees fell on the home of Dawn Lewis and Darold Teitzel. Lewis and Teitzel sued Gary and Nancy Krussel, who owned the property on which the trees had been growing. Because there was no evidence that the Krussels had any reason to believe that these particular trees posed a hazard, the trial court granted the Krussels' motion for summary judgment. On appeal, Lewis and Teitzel urge us to hold that a landowner who has notice that other trees of the same *488 species have fallen has a duty to remove his healthy trees. We decline to so hold and, thus, affirm.

FACTS
Lewis and Teitzel live on property adjacent to that of the Krussels in a residential area of Grays. Harbor County. On December 3, 1995, two of the Krussels' large hemlock trees fell over during a windstorm, damaging the roof on the Lewis/Teitzel house.
In January 1997, Lewis and Teitzel filed a complaint for damages against the Krussels. Both sides filed summary judgment motions.
Lewis and Teitzel supported their motion with the parties' depositions. Gary Krussel acknowledged that windstorms had knocked down other trees on his property and other property nearby in previous years. He also said that one tree on his property or a neighbor's property fell on or near a neighbor's truck some years previously. During severe windstorms, including the one on December 3, 1995, he would have his mother stay at his house instead of in her mobile home that was set among the trees. About a week after the windstorm at issue here, another windstorm had knocked a tree onto his mother's mobile home.
Gary Krussel stated that the trees that damaged the Lewis/Teitzel house were natural growth and that he had no reason to believe that they were any more dangerous than any other trees on his property under normal conditions. He could not recall participating in discussions with Lewis regarding the latter's concerns about the trees but said if such discussions took place, they probably related to a different parcel in the neighborhood, which had a "terrible problem" with falling trees. Krussel also testified that after the damage to the Lewis/Teitzel house he cut down other hemlock trees located near their house upon the recommendation of the local utility district.
Teitzel said that he and Lewis expressed concern to the Krussels about the trees toppling over in the wind. Lewis stated that she expressed concerns to Krussel about the trees swaying in the wind and that both Gary and Nancy Krussel told her that they would do something about the trees. Lewis also testified that after the trees fell on their roof, Gary Krussel said something to the effect that he should have done something sooner about the trees.
The Krussels supported their motion for summary judgment with the declaration of Doug Truax, a professional forester who inspected the stump of one of the fallen trees. Truax stated that he found no evidence of rot or disease in the stump or other trees. He concluded that the tree that fell on the Lewis/Teitzel house was no more dangerous than any other tree standing on the Krussels' property. Truax stated that even healthy trees blow over in heavy winds and that there was no way for the Krussels to determine beforehand whether any one of their trees would fall over.
The trial court granted summary judgment in favor of the Krussels and dismissed the Lewis/Teitzel claims. Lewis and Teitzel moved for reconsideration and filed an affidavit by a meteorologist who provided data from a recording station located about three miles from their home. The meteorologist reported that data showed that the maximum sustained wind at that location on the night in question was 25.7 mph with a maximum gust to 38.7 mph. The meteorologist concluded that such winds were "fairly common" at that location during that particular time of year and did not constitute an "extraordinary" or "highly unusual wind event."
The trial court denied the motion to reconsider. Lewis and Teitzel appeal.

DISCUSSION
Preliminarily, the Krussels note that Lewis and Teitzel did not assign error to the trial court's conclusion that there was no genuine issue of material fact. They suggest that Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 937 P.2d 1082 (1997), may have overruled the established standard of review of a summary judgment ruling. We conclude that it did not.
Greater Harbor, a plurality decision, involved an appeal from a summary judgment. Two justices reasoned that the appellant's failure to assign error to the trial *489 court's "finding" that the case did not involve a genuine issue of material fact rendered such finding a verity, supporting summary judgment in favor of the respondent. Greater Harbor, 132 Wash.2d at 279, 937 P.2d 1082. But a larger plurality of justices decided Greater Harbor on ripeness grounds. 132 Wash.2d at 285, 937 P.2d 1082. Consequently, Greater Harbor did not alter the traditional rule that the trial court's findings on summary judgment are superfluous and this court need not consider them. See Concerned Coupeville Citizens v. Town of Coupeville, 62 Wash.App. 408, 413, 814 P.2d 243 (1991); Donald v. City of Vancouver, 43 Wash.App. 880, 883, 719 P.2d 966 (1986).
Here, Lewis and Teitzel assigned error to the trial court's granting of summary judgment and identified issues arising from that action. Thus, we follow the established standard of review in considering this case, engaging in the same inquiry as the trial court. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). We consider the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Bishop, 137 Wash.2d at 523, 973 P.2d 465; Taggart v. State, 118 Wash.2d 195, 199, 822 P.2d 243 (1992). And we review questions of law de novo. Bishop, 137 Wash.2d at 523, 973 P.2d 465.
Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Bishop, 137 Wash.2d at 523, 973 P.2d 465; Taggart, 118 Wash.2d at 198-99, 822 P.2d 243. A material fact is one that affects the outcome of the litigation. See Greater Harbor, 132 Wash.2d at 279, 937 P.2d 1082.

I. Elements of Negligence
Lewis and Teitzel appear to base their claims in both nuisance and negligence. The Krussels contend that this court should confine its review to the negligence claim because it forms the basis for the nuisance claim.
"In Washington, a `negligence claim presented in the garb of nuisance' need not be considered apart from the negligence claim." Atherton Condominium Apartment-Owners Ass'n Bd. v. Blume Dev. Co., 115 Wash.2d 506, 527, 799 P.2d 250 (1990) (quoting Hostetler v. Ward, 41 Wash.App. 343, 360, 704 P.2d 1193 (1985)). "In those situations where the alleged nuisance is the result of the defendant's alleged negligent conduct, rules of negligence are applied." Atherton, 115 Wash.2d at 527, 799 P.2d 250 (citing Hostetler, 41 Wash.App. at 360, 704 P.2d 1193).
Here, Lewis and Teitzel ground their nuisance claim on the Krussels' inaction with regard to the fallen trees. In other words, the nuisance is the result of negligence. Atherton, 115 Wash.2d at 528, 799 P.2d 250. Accordingly, we do not consider the nuisance claim apart from the negligence claim. Atherton, 115 Wash.2d at 528, 799 P.2d 250.
"The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999) (citing Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996)). "Existence of a duty is a question of law." Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citing Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 474, 951 P.2d 749 (1998)).
There is no dispute that the offending trees toppled from the Krussels' land and damaged the Lewis/Teitzel house. The dispositive issue is whether Krussel had a duty to remove the healthy trees before they fell.

II. Duty of Landowner
The general thrust of the Lewis/Teitzel argument is that hemlock trees are inherently prone to toppling over and, thus, the Krussels were under a duty to cut down any of their hemlock trees that could fall on the Lewis/Teitzel house. But this theory is tantamount to a strict liability standard for the owners of hemlock trees. Neither the evidence nor the law support this proposition.
The few strict liability authorities cited by Lewis and Teitzel do not apply in the fallen tree context. See, e.g., Vern J. Oja & Assoc. *490 v. Washington Park Towers, Inc., 89 Wash.2d 72, 76-77, 569 P.2d 1141 (1977) (holding that pile driving on construction site was abnormally dangerous activity warranting strict liability for damage caused to adjoining property). Louisiana is the only state we find that imposes strict liability for the fall of defective trees. See Loescher v. Parr, 324 So.2d 441, 445 (La.1975). But Louisiana law does not apply here because its liability there arises from statute. Loescher, 324 So.2d at 445. Consequently, we apply general negligence standards.
"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. Page Keeton et al, The Law of Torts § 53, at 356 (5th ed.1984). With respect to a defendant's duty to others, liability is based on "misfeasance," affirmative misconduct or, in more limited circumstances, "nonfeasance," passive inaction or failure to take steps to protect others from harm. Keeton, supra, § 56, at 373. The largest category of defendants upon whom there is a duty grounded in "nonfeasance" are owners and occupiers of land. Keeton, supra, § 56, at 374.
"Cases dealing with the liability of adjoining property owners for damages caused by falling trees have not arrived at harmonious results." Dudley v. Meadowbrook, Inc., 166 A.2d 743, 743-44 (D.C.1961) (citing cases). The traditional rule is set forth in the RESTATEMENT (SECOND) OF TORTS, which states:
(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.
§ 363 (1965).[1] "Natural condition of land" includes the natural growth of trees. RESTATEMENT, supra, § 363 cmt. b.
It appears that there is only one published case in this jurisdiction that directly deals with an adjoining landowner's liability for falling trees. Albin v. National Bank, 60 Wash.2d 745, 375 P.2d 487 (1962). In Albin, a windstorm knocked a tree across a county road killing the occupant of a passing car and injuring its driver. 60 Wash.2d at 746, 375 P.2d 487. The road passed through a heavily wooded, but recently logged, mountainous area. Albin, 60 Wash.2d at 746-47, 375 P.2d 487.
The Albin court approved the dismissal of the plaintiffs wrongful death action against the county, stating:
There is no evidence that the county had actual notice that the tree which fell was any more dangerous than any one of the thousands of trees which line our mountain roads, and no circumstances from which constructive notice might be inferred. It can, of course, be foreseen that trees will fall across tree-lined roads; but short of cutting a swath through wooded areas, having a width on each side of the traveled portion of the road equivalent to the height of the tallest trees adjacent to the highway, we know of no way of safeguarding against the foreseeable danger.
60 Wash.2d at 748-49, 375 P.2d 487. But the Albin court reached a different result with regard to the landowner. It reasoned that because the landowner had altered the property from its natural state by logging it, there was a jury question as to his liability. 60 Wash.2d at 754, 375 P.2d 487.
Although Albin did not rely on the RESTATEMENT, it applied portions of its substance.[2]Compare Albin, 60 Wash.2d at 752, 375 P.2d 487 with RESTATEMENT, supra, § 363(1). In particular, Albin found it significant that the landowner had altered a natural condition that resulted in injury and it also recognized that the property was located in a rural setting. 60 Wash.2d at 751-52, 375 *491 P.2d 487. Thus, Albin supports the proposition that a rural landowner may be liable if he has actual or constructive notice that an alteration to a natural condition creates a hazard to persons on adjacent property. 60 Wash.2d at 752, 375 P.2d 487.
Albin is also consistent with the evolution of the law with regard to trees adjacent to other property. In general, the owner of land located in or adjacent to an urban or residential area has a duty of reasonable care to prevent defective trees from posing a hazard to others on the adjacent land. See, e.g., Cornett v. Agee, 143 Ga.App. 55, 237 S.E.2d 522, 523-24 (1977); Mahurin v. Lockhart, 71 Ill.App.3d 691, 28 Ill.Dec. 356, 390 N.E.2d 523, 524-25 (1979); Barker v. Brown, 236 Pa.Super. 75, 340 A.2d 566, 569 (1975); Israel v. Carolina Bar-B-Que, Inc., 292 S.C. 282, 356 S.E.2d 123, 127 (1987); see also Keeton, supra, § 57, at 391.[3] These authorities support the proposition that a possessor or owner of urban or residential land who has actual or constructive knowledge of defective trees is under a duty to take corrective action for the protection of the plaintiff on adjacent land.
Actual or constructive notice of a "patent danger" is an essential component of the duty of reasonable care. See Nationwide Ins. Co., 639 N.E.2d at 537 (quoting Heckert v. Patrick, 15 Ohio St.3d 402, 473 N.E.2d 1204, 1207-08 (1984); Brown v. Milwaukee Terminal Ry., 199 Wis. 575, 589-90, 224 N.W. 748, 227 N.W. 385, 386 (1929)). Absent such notice, the landowner is under no duty to "consistently and constantly" check for defects. Ivancic, 497 N.Y.S.2d 326, 488 N.E.2d at 73; Meyers, 529 N.W.2d at 290 (quoting Ivancic); see also Cornett, 237 S.E.2d at 524 ("there is no duty to consistently and constantly check all pine trees for non-visible rot as the manifestation of decay must be visible, apparent, and patent so that one could be aware that high winds might combine with visible rot and cause damage"); Israel, 356 S.E.2d at 127 (noting that defendant should have been aware of decaying limb). The alleged defect must be "readily observable" so that the landowner can take appropriate measures to abate the threat. Ivancic, 497 N.Y.S.2d 326, 488 N.E.2d at 73; Meyers, 529 N.W.2d at 290 (quoting Ivancic); see also Cornett, 237 S.E.2d at 524.
The reasoning of the above courts is consistent with Albin, the only authority in this State, and persuades us that one whose land is located in or adjacent to an urban or residential area and who has actual or constructive knowledge of defects affecting his trees has a duty to take corrective action. Dudley, 166 A.2d at 744; Willis, 361 S.E.2d at 513; Mahurin, 28 Ill.Dec. 356, 390 N.E.2d at 525; Burke, 571 A.2d at 299; Ivancic, 497 N.Y.S.2d 326, 488 N.E.2d at 73; Nationwide Ins. Co., 639 N.E.2d at 537; Barker, 340 A.2d at 569. Conversely, absent such knowledge, an owner/possessor does not have a duty to remove healthy trees merely because the wind might knock them down.

III. Evidence of Breach
Having determined the landowner/possessor's duty, we now consider whether Lewis and Teitzel presented evidence that the Krussels breached this duty. Their contention that it was foreseeable that a windstorm would bring down one of the Krussels' healthy trees is insufficient to show the requisite actual or constructive knowledge of a defect. See Albin, 60 Wash.2d at 748-49, 752, 375 P.2d 487 (tree was probably dead because loggers left it standing); Dudley, 166 A.2d at 744 (tree "full of decay"); Burke, 571 A.2d at 297 (tree showed evidence of past treatment for disease or carpenter ant damage); Barker, 340 A.2d at 567 (tree *492 decayed and rotting); Israel, 356 S.E.2d at 127 (offending limb "partially decayed").
As Lewis and Teitzel concede, there is no evidence contradicting forester Truax's statement that the tree he inspected was free of defects. Although the evidence indicates that the Krussels were aware of Lewis's and Teitzel's general concern that the trees swayed in the wind and could hit their house and that other trees had fallen in the area in previous years, this did not put Krussel on actual or constructive notice of a defect requiring removal of the trees. See Wade v. Howard, 232 Ga.App. 55, 499 S.E.2d 652, 655 (1998) (reviewing court will not rely on neighbor's lay opinion regarding danger of leaning tree absent evidence of defective condition). Nor does evidence that the Krussels made a vague promise to do something about the trees or moved their mother from her mobile home during wind storms prove their knowledge that the trees in question posed a hazard. Missing is evidence that the offending trees suffered from defects making them more prone to fall and thus requiring their reinforcement or removal. See Gibson v. Hunsberger, 109 N.C.App. 671, 428 S.E.2d 489, 492 (1993) (evidence that healthy tree was leaning would not have put landowner on constructive notice that a dangerous condition existed in region where it was common for healthy trees to lean); Ford v. South Carolina Dep't of Transp., 328 S.C. 481, 492 S.E.2d 811, 815 (1997) (evidence that saturated ground contributed to fall of healthy tree sufficient to raise material issue of fact as to whether Department failed to detect and prevent hazard to adjoining rural road).
Finally, Lewis cannot rely on her own bare allegations as to the alleged vulnerability of hemlock trees to establish the Krussels' knowledge of defects in the trees at issue. Absent the declarant's personal knowledge or some other competent evidence linking the natural characteristics of hemlock trees and their alleged tendency to fall, such conclusory allegations are inadequate to raise a genuine issue of material fact. See, e.g., Meissner v. Simpson Timber Co., 69 Wash.2d 949, 955-56, 421 P.2d 674 (1966); Loss v. DeBord, 67 Wash.2d 318, 321, 407 P.2d 421 (1965); Curran v. City of Marysville, 53 Wash.App. 358, 367, 766 P.2d 1141 (1989); Wade, 499 S.E.2d at 655.
Viewing the evidence in the light most favorable to Lewis and Teitzel, there are no genuine issues of material fact as to whether the Krussels were actually or constructively aware of any defects in the trees that required remedial action to prevent them from falling or whether the Krussels breached any duty to Lewis and Teitzel. See Folsom v. Burger King, 135 Wash.2d 658, 677-78, 958 P.2d 301 (1998); Wade, 499 S.E.2d at 655-56; Heckert, 473 N.E.2d at 1207-08. Thus, the trial court properly granted summary judgment in favor of the Krussels.
Accordingly, we affirm.
MORGAN, P.J., and HOUGHTON, J., concur.
NOTES
[1] RESTATEMENT, supra, § 840, sets forth an analogous rule with respect to nuisance.
[2] Albin was decided before publication of the Restatement (Second) sections cited earlier in this opinion.
[3] In recognition of the increasing development and urbanization of the American landscape, many courts are rejecting the urban/rural distinction and instead are applying a general duty of reasonable care in all situations. See, e.g., Sprecher v. Adamson Cos., 30 Cal.3d 358, 636 P.2d 1121, 1128-29, 178 Cal.Rptr. 783 (1981) (landslide case applying tree case analysis); Dudley, 166 A.2d at 744; Willis v. Maloof, 184 Ga. App. 349, 361 S.E.2d 512, 513 (1987); Meyers v. Delaney, 529 N.W.2d 288, 290 (Iowa 1995); Burke v. Briggs, 239 N.J.Super. 269, 571 A.2d 296, 299-300 (1990) (adopting Sprecher); Ivancic v. Olmstead, 66 N.Y.2d 349, 488 N.E.2d 72, 73, 497 N.Y.S.2d 326, 54 A.L.R.4th 523 (1985); Nationwide Ins. Co. v. Jordan, 64 Ohio Misc.2d 30, 639 N.E.2d 536, 537 (1994); see also 62A Am.Jur.2d, Premises Liability, § 747 (1990).