### A11A1579, A11A1580. GEORGIA DEPARTMENT OF TRANSPORTATION v. SMITH et al.
### A11A2017, A11A2089. SMITH et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.
(724 SE2d 430)

MIKELL, Presiding Judge.

Ernest F. Smith, Sr., and his wife, Irene D. Smith, lost their lives from injuries they sustained after a large oak tree fell on their vehicle as they were driving on State Route 154. Ernest F. Smith, Jr., and Robert M. Smith (the Smiths), individually and as co-executors of their parents' estates, brought the underlying wrongful death actions against the Georgia Department of Transportation (DOT), alleging that the tree in question was hazardous; that it was growing on the DOT's right of way; and that the DOT's employees were negligent in failing to discover and remove it. In each lawsuit, the DOT moved to dismiss based on sovereign immunity. The trial court denied the DOT's motion to dismiss, and the DOT appeals from these orders in Case Nos. A11A1579 and A11A1580.[1] The trial court subsequently granted summary judgment in favor of the DOT and against the Smiths; the Smiths appeal from these orders in Case Nos. A11A2017 and A11A2089. For the reasons set forth below, we affirm

---

[1] Though not final orders, the orders denying the DOT's motions to dismiss are directly appealable under the collateral order doctrine. See *Bd. of Regents &c. v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009) (under collateral order doctrine, this Court has jurisdiction over direct appeal of denial of motion to dismiss, where order is based on conclusive determination that state defendant is not immune from suit by reason of sovereign immunity).

the trial court's orders in these cases.

## Case Nos. A11A1579 and A11A1580

1. In Case Nos. A11A1579 and A11A1580, the DOT argues that it is immune from suit under the Georgia Tort Claims Act ("GTCA"),[2] and therefore that the trial court lacked subject matter jurisdiction over it.[3] "We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity."[4]

The tree which fell and struck the vehicle driven by the decedents was located in the right-of-way maintained by the DOT. In their complaints, the Smiths alleged that the DOT was negligent in failing to inspect the tree adequately and in failing to remove it before it fell on their parents' car.

According to the affidavit of Eric Pitts, state maintenance engineer for the DOT, the DOT is responsible for maintaining approximately 18,000 linear miles of the State Highway System, including the right-of-way on both sides of the road, and has a limited budget with which to accomplish this end. The DOT's existing inspection policy for the state right-of-way includes, first, weekly "windshield" inspections by the DOT's maintenance fore-man of the state routes in his or her assigned area; and second, a semi-annual written inspection by the DOT's assistant area engineer for maintenance, also conducted as a "windshield" inspection while driving. Under the DOT's tree removal policy, the district mainte-nance engineer decides whether to remove a tree from the right-of-way and consults with the state agronomist in the event he suspects that a tree is diseased. Although Pitts averred that DOT foremen are specifically trained to inspect "the vegetation adjacent to the paved surface" and other "issues that may affect safe travel on state routes," the DOT foreman who was responsible for weekly inspec-tions of the area that included the subject tree testified by deposition that during his inspections, beginning in 2004, he did not inspect trees.

Under the GTCA, the state waives its sovereign immunity for the torts of state employees while acting within the scope of their

---

[2] OCGA § 50-21-20 et seq.

[3] See *Coosa Valley Technical College v. West*, 299 Ga. App. 171, 174 (1) (682 SE2d 187) (2009) (whole court) (state defendant's motion to dismiss on ground of sovereign immunity was a motion to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1)).

[4] (Citations omitted.) *Williams v. Ga. Dept. of Transp.*, 275 Ga. App. 88, 89 (1) (619 SE2d 763) (2005). Accord *Bd. of Regents*, supra at 509 (3).

official duties "in the same manner as a private individual or entity would be liable under like circumstances."[5] The waiver is subject to the exceptions set forth in OCGA § 50-21-24, and "[a] major exception to state liability under the [GTCA] is the 'discretionary function' exception."[6] Under this exception, "[t]he state shall have no liability for losses resulting from . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused."[7]

The DOT contends that its tree inspection "policy" falls within the "discretionary function" exception to the waiver of sovereign immunity found in the GTCA; and that therefore the Smiths' lawsuits were barred by the doctrine of sovereign immunity. We do not agree.

The GTCA provides the following definition of "discretionary function": " 'Discretionary function or duty' means a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."[8] In *Ga. Dept. of Transp. v. Miller*,[9] plaintiffs alleged that the DOT failed to keep a culvert free of debris, causing rainwater to accumulate on the road where plaintiffs' decedent lost control of his vehicle and was killed in a single-car crash.[10] The DOT contended that its personnel had to make a "judgment call" as to which culverts to inspect after a storm; and that this "judgment call" was a "discretionary function" which was not subject to the waiver of sovereign immunity found in the GTCA.[11] We rejected the DOT's argument in that case, noting that a "discretionary function" within the meaning of the GTCA was one requiring the exercise of *"policy judgment* in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."[12] We explained that "[t]he Supreme Court of Georgia has emphasized that these factors are only intended to signal 'basic governmental policy decisions,' and are not to be construed overly broadly."[13] We concluded that "the day-to-day

---

[5] OCGA § 50-21-23 (a). See *Lewis v. Ga. Dept. of Human Resources*, 255 Ga. App. 805, 806 (567 SE2d 65) (2002).

[6] *Edwards v. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 891 (525 SE2d 83) (2000). See OCGA § 50-21-24 (2).

[7] OCGA § 50-21-24 (2).

[8] OCGA § 50-21-22 (2).

[9] 300 Ga. App. 857 (686 SE2d 455) (2009).

[10] Id. at 858.

[11] Id. at 859 (1).

[12] (Footnote omitted; emphasis in original.) Id.

[13] Id., citing *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 680 (523 SE2d 571) (1999).

operational decision of whether and where to send out DOT personnel to inspect for road hazards on the day in question was not a basic governmental policy decision for purposes of the GTCA,"[14] and that therefore it did not fall within the "discretionary function" exception to the GTCA's waiver of sovereign immunity.[15] Similarly, in *Dept. of Transp. v. Brown*,[16] our Supreme Court noted that "the discretionary function exception is limited to basic governmental policy decisions,"[17] and that "[t]he key to this issue is the difference between design and operational decisions and policy decisions."[18] In that case, the Supreme Court held that the DOT's decision to open a new intersection before installing traffic lights was not a "policy decision" within the scope of the "discretionary function" exception to the immunity waiver.[19]

We conclude that the case before us is governed by our decision in *Miller*.[20] The DOT employees' operational inspections of the roadways, and their concomitant decisions as to whether or not to inspect and remove hazardous trees, do not constitute "basic governmental policy decisions" within the scope of the "discretionary function" exception to the waiver of immunity found in the GTCA. The trial court did not err in denying the DOT's motions to dismiss the Smiths' claims.

## Case Nos. A11A2017 and A11A2089

2. In Case Nos. A11A2017 and A11A2089, the Smiths appeal from the trial court's orders granting summary judgment to the DOT on their claims. Because there is no genuine issue of material fact regarding whether the DOT knew or should have known that the tree constituted a dangerous condition, we conclude that the trial court did not err in granting summary judgment in favor of the DOT.

> In order to prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may obtain summary

---

[14] (Footnote omitted.) *Miller*, supra.

[15] Id. at 860 (1).

[16] 267 Ga. 6 (471 SE2d 849) (1996).

[17] Id. at 7 (1).

[18] Id.

[19] Id. See also *Edwards*, supra at 893 ("the decision of state employees on the type of emergency medical care to provide incarcerated juveniles does not fall within the discretionary function exception to the Georgia Tort Claims Act").

[20] Supra.

judgment by demonstrating that the record contains no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. A defendant is not required to affirmatively disprove the plaintiff's case, but may prevail by pointing to the absence of evidence to support the plaintiff's case. If the defendant does so, the plaintiff cannot rest on [his] pleadings, but must point to specific evidence giving rise to a triable issue of fact.[21]

The standard for a landowner's liability for damage resulting when a tree on his property falls on adjacent property is well established in Georgia. As this Court stated in *Willis v. Maloof*,[22] "In regard to liability for a defective tree[,] the ordinary rules of negligence apply. The owner of a tree is liable for injuries from a falling tree only if he knew or reasonably should have known the tree was diseased, decayed or otherwise constituted a dangerous condition."[23] Thus, a landowner who *knows* that a tree on his property is decayed and may fall and cause damage to another has "a duty to eliminate the danger,"[24] but "there is no duty to consistently and constantly check all . . . trees for non-visible rot[,] as the manifestation of decay must be visible, apparent, and patent."[25] The following standard applies here: the landowner is only charged with knowledge of the dangerous condition of the tree if "a layman should have reasonably known the tree was diseased. . . . [D]efendant would not be charged with the knowledge or understanding of an expert trained in the inspection, care and maintenance of trees."[26]

Here, there is no evidence that the tree at issue showed any evidence of disease or decay that would have been apparent to a layman. The Smiths' expert examined the tree at issue on February 25, 2009, three months after the tree fell on November 14, 2008. He testified that it was a white oak tree, approximately 90 feet tall before its fall, with a 24-inch diameter. He further testified that the tree was alive and still growing when it fell, with a "pretty good crown spread." His examination of the base of the tree revealed three visible defects indicating that it should have been removed: a "circling root" approximately six inches in diameter near the base of

---

[21] (Punctuation and footnote omitted.) *Klein v. Weaver*, 265 Ga. App. 390-391 (593 SE2d 913) (2004).

[22] 184 Ga. App. 349 (361 SE2d 512) (1987).

[23] Id. at 350 (2). Accord *Klein*, supra at 392.

[24] (Citations and punctuation omitted.) *Cornett v. Agee*, 143 Ga. App. 55, 56 (1) (237 SE2d 522) (1977).

[25] Id. at 57 (1). Accord *Wade v. Howard*, 232 Ga. App. 55, 58 (499 SE2d 652) (1998).

[26] *Willis*, supra at 350-351 (2).

the tree, which the expert testified would inhibit the normal development of the tree's root system and root buttress area; a single "fruiting body" or fungus, also called a "mushroom bracket," located at the base of the tree adjoining the soil, indicative of root buttress decay; and discoloration, or darkening, of the tree's bark less than six inches above ground level, also indicative of root rot. The witness also testified that the tree had minimal "flare" at its base (a "telephone pole effect"), suggesting that the circling root was inhibiting normal development of the tree; and that this defect would be "suspect" to "a trained eye." The witness admitted that none of these defects could have been identified during a "drive-by" inspection. There is no evidence that the DOT was aware of, or had been alerted to, the signs of decay at the base of this tree.

Even assuming the DOT's employees should have noticed these conditions on this particular tree, no evidence was presented from which a jury could find that the DOT's employees, who were not tree experts, should reasonably have known that the tree was diseased. We conclude that this case is governed by our decision in *Willis*.[27] There, plaintiff's expert testified to the following visible conditions on the offending tree, indicative to the expert that the tree was diseased or decayed: the bark at the tree's base "curved under instead of outward"; a cavity or hollow was present on the side of the tree; and fungus was growing on the tree's bark.[28] We held that this evidence was insufficient as a matter of law to charge the defendant with constructive knowledge that the tree was diseased.[29] Similarly, in the case at bar, "[t]he expert witness presented testimony from which a jury could find that the tree was in fact diseased. However, the testimony of the expert witness did not establish that a layman should have reasonably known the tree was diseased."[30]

The Smiths also adduced evidence, in the form of photographs,[31] that the subject tree was leaning in the direction of the road. The Smiths argue that this evidence raises a jury issue as to whether the DOT had constructive knowledge of the tree's dangerous condition. We reject this argument for two reasons. First, "this Court has declined to use the fact that a tree may be overhanging or leaning in one direction as a basis for notice that it is in a dangerous condi-

---

[27] Id.

[28] Id.

[29] Id. Accord *Wade*, supra (summary judgment to defendant affirmed where plaintiffs failed to demonstrate patent visible decay in tree before it fell).

[30] *Willis*, supra.

[31] It is not necessary for us to address the parties' asserted errors concerning whether the photographs from Google Earth were admissible.

tion."[32] Second, even assuming that the lean of the tree in this case would have given the DOT constructive notice, that constructive notice would only be notice "of what a reasonable inspection would reveal" as to the condition of the subject tree.[33] And as discussed above, the visible signs at the bottom of this tree — an exposed root, a single fungus growth, a darkened area of bark just above the ground, and lack of "flare" at the base — were insufficient to alert a layman that this tree was diseased or decayed.

The Smiths' expert also opined that there was "a long history of tree failures in the area [of the tree at issue] evidenced by the amount of tree debris laying [sic] on the ground in various stages of decay." Relying on *Wesleyan College*,[34] the Smiths contend that the evidence of alleged "blight" in the area gave the DOT constructive notice of the diseased condition of the tree at issue. The Smiths' reliance on *Wesleyan College* is misplaced. There, the evidence showed that "[t]he pines in the general area where the tree fell were blighted and many were dead, diseased, dying, or had fallen."[35] Thus, the defendant College had actual or constructive knowledge that this was a "problem area," giving rise to a duty to inspect.[36] In that case, a reasonable inspection would have revealed that the specific tree that fell had a four-foot-long rotten cavity two feet above its base, observable to a layman.[37] Because the rotten cavity in the tree was a "visible, apparent, and patent" indication of decay,[38] and because the evidence showed that this defect had existed "for such a period of time that [the College] in the exercise of ordinary care should have discovered and removed this hazard to the users of the street,"[39] the College was held liable for failing to discover and remove the hazardous tree. In the case at bar, however, even assuming that the DOT should have made "walk-by" inspections by reason of the alleged "blight" in the area, such inspections would not have alerted the DOT to problems with this particular tree. As discussed above, the tree at issue did not exhibit "visible, apparent, and patent" signs of decay or disease which would give rise to a duty to remove it.

---

[32] *Wade*, supra, citing *Carter v. Ga. Power Co.*, 204 Ga. App. 77, 78 (1) (418 SE2d 379) (1992) (city had no duty to check limbs overhanging public road for nonvisible rot); and *Cornett*, supra at 57 (1) (owner's liability was not based on fact that tree was "leaning visibly toward the neighboring yard," but on fact that tree had visible rot in its trunk and appeared "to be in a partially dead condition") (id. at 55 (1)).

[33] *Wesleyan College v. Weber*, 238 Ga. App. 90, 94 (b) (517 SE2d 813) (1999) (whole court).

[34] Id.

[35] Id.

[36] Id.

[37] Id. at 93 (a).

[38] Id.

[39] Id. at 95 (c).

3. Without citing any Georgia authority in support, the Smiths argue that the DOT should be held to a higher standard of care by reason of its responsibility to plan, manage, and maintain the state highway system under OCGA § 32-2-2.[40] "Sovereign immunity applies to the [s]tate and its departments and agencies except to the extent that the legislature enacts a specific waiver."[41] As discussed in Division 1 above, the waiver of sovereign immunity found in the GTCA provides that the state shall be liable for torts "in the same manner as a private individual or entity would be liable under like circumstances."[42] Therefore, we decline to impose a higher standard of care on the DOT in this case.

4. The Smiths contend that the DOT is liable for failure to comply with its own regulations regarding inspections of roadways. As discussed in Division 2 above, however, even assuming that the DOT failed to comply with its own inspection procedures in this case, the tree at issue here had no "visible, apparent, and patent" signs of disease or decay which would have been discovered in such an inspection.

We affirm the trial court's grant of summary judgment in favor of the DOT.

*Judgments affirmed. Dillard and Boggs, JJ., concur.*

DECIDED FEBRUARY 29, 2012 — ▮▮▮▮▮▮▮

*Samuel S. Olens, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Robert L. Bunner, Assistant Attorney General*, for Georgia Department of Transportation.

*Johnson & Ward, Clark H. McGehee, William C. Lanham*, for Smith et al.

---

[40] OCGA § 32-2-2 (a) (1).
[41] *Williams*, supra.
[42] OCGA § 50-21-23 (a).