**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 2, 2015**

# In the Court of Appeals of Georgia

A15A0442. THE CITY OF FITZGERALD v. CARUTHERS.

MILLER, Judge.

Larry Caruthers sued the City of Fitzgerald (the "City") alleging that the City was liable for damages for failing to remove a decayed tree limb that crashed down on him while he was standing on a curb. The trial court denied the City's motion for summary judgment, concluding that the City was not entitled to sovereign immunity because a question of fact existed as to whether the City had notice of the decayed tree limb.[1] We granted the City's application for interlocutory review, and on appeal, the City contends that the trial court erred in denying its motion for summary

---

[1] Caruthers also sued the Director of the Public Works Department for the City (the "Director"), and he does not challenge the trial court's grant of summary judgment to the Director.

judgment because there was no evidence that the City had actual or constructive notice of the hazardous tree. For the following reasons, we affirm.

> Summary judgment is proper when the moving party shows that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. We apply a de novo standard of review to an appeal from a grant or denial of summary judgment and construe the evidence most favorably to the nonmovant.

(Footnotes omitted.) *Welch v. Ga. Dept. of Transp.*, 283 Ga. App. 903 (642 SE2d 913) (2007).

So viewed, the evidence shows that Caruthers, who worked for the City's Public Works Department, was walking home from work on the afternoon of March 23, 2010. Caruthers walked home down an alley between Magnolia and Jessamine Streets. When Caruthers reached the curb on Jessamine Street, a tree limb fell and struck him, rendering him unconscious for approximately 20 minutes and causing injuries to his neck and upper back, as well as lacerations to his eye. Caruthers was taken to the hospital.

Later that night, the Director visited the scene of the accident and observed a rotten limb laying in the road. The Director also observed the tree in a declining state with some rotten limbs at the top of it. Based on these observations, the Director ordered the tree to be removed, but he did not document the work request, nor did he

2

take any pictures of the tree. The Director conceded that he had no specialized training in evaluating trees, and that his conclusion that the tree was slowly dying was based on his experience as a layperson.

Removal of the decayed tree began the following day with the limbs being cut down first. Before the stump was removed, Caruthers, who had been released from the hospital, saw that the stump had rotten parts.

At the time of Caruthers's injury, the City's Public Works Department employed 38 individuals to maintain the public thoroughfares in the City, including the maintenance of trees located on City property. In less than one month, these employees would cover all of the City's streets. Additionally, Caruthers was aware that several trees in the area had been trimmed about a year before his injury because of complaints that the limbs were obstructing bus traffic.

The Director admitted that the Public Works Department did not have a procedure for the inspection of trees on City property. Instead, the Director held periodic safety meetings with the employees of the Public Works Department where the Director instructed the employees to be aware of their surroundings and to report any hazards they might encounter.

The Public Works Department also received reports from city residents about hazardous trees. Upon receiving a report, the department would usually generate a work order that would be given to a crew member. The Director conceded, however, that written work orders were not always prepared. The Public Works Department did not maintain duplicates of work orders, and the department did not have any written documentation showing whether work orders had been completed. While the Director was not aware of any complaints made about the condition of the tree in question before the limb fell on Caruthers, not every complaint was documented, so he conceded that there may have been complaints about the tree in question that were not on file with the City.

On appeal, the City contends that the trial court erred in denying its motion for summary judgment, because there is no evidence that the City had actual or constructive notice of the decaying tree. We disagree.

Although the City raises the issue of sovereign immunity, a municipality's function of improving or maintaining its streets and sidewalks in a safe condition has long been held to be ministerial in nature. *City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 3-4 (2) (421 SE2d 113) (1992). Sovereign immunity does not shield a municipality from liability for failing to perform or negligently performing a

4

ministerial duty. OCGA § 36-33-1 (b); see also *City of Atlanta v. Durham*, 324 Ga. App. 563, 565 (751 SE2d 172) (2013) ("[M]unicipalities have been subject to suit for negligent performance or nonperformance of their ministerial functions while enjoying immunity from suit for the negligent performance or nonperformance of their governmental functions.") (citations omitted). Consequently, it is well settled that a municipal corporation has a duty to keep its streets and sidewalks in a reasonably safe condition for travel and may be liable for damages for injuries sustained as a result of its breach of that duty. *Roquemore v. City of Forsyth*, 274 Ga. App. 420, 422 (617 SE2d 644) (2005).

> More specifically, under OCGA § 32-4-93 (a),
>
> municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred. This Court has held that the term "defects" covered by this Code section includes defects brought about by the forces of nature and by persons and which render the street unsafe and includes objects adjacent to and suspended over the street.

(Citations and punctuation omitted.) *Roquemore*, supra, 274 Ga. App. at 423. "The length of time a defect must exist in order for an inference of notice to arise is ordinarily a question for the jury." (Punctuation and footnote omitted.) *Schuessler v. Bennett*, 287 Ga. App. 880, 886-887 (3) (652 SE2d 884) (2007).

5

With regard to liability for a decaying tree, while there is no duty to routinely inspect trees for non-visible rot, a landowner has a duty to inspect trees with "visible, apparent, and patent" decay. *Wesleyan Coll. v. Weber*, 238 Ga. App. 90, 94 (b) (517 SE2d 813) (1999). If the landowner knew or reasonably should have known that the tree was "diseased, decayed or otherwise constituted a dangerous condition," the owner has a duty to remove the danger. See *Ga. Dept. of Transp. v. Smith*, 314 Ga. App. 412, 416 (2) (724 SE2d 430) (2012). A landowner is charged with knowledge of the dangerous condition of a tree if a layperson should have known the tree was diseased. Id. ("Defendant would not be charged with the knowledge or understanding of an expert trained in the inspection, care and maintenance of trees.") (punctuation and footnote omitted).

As to actual notice, the City admitted that it did not document every complaint about hazardous trees. As the non-movant, Caruthers was not required to submit evidence of actual notice because

> [o]n a motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. The movant has that burden even as to issues upon which the opposing party would have the trial burden, and the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence.

6

(Punctuation omitted.) *Carter v. Mayor & Alderman of City of Savannah*, 200 Ga. App. 263, 266 (1) (407 SE2d 421) (1991). Viewing the evidence in the light most favorable to Caruthers, there is a question of fact as to whether the City had actual notice of the hazard because of the City's own lack of documentation on the issue.

Moreover, even if the City did not have actual notice, there is a question of fact as to whether the City had constructive notice. Notably, the Director testified that he observed dead limbs on the tree in question, and Caruthers noticed that the stump also showed signs of rot and decay. The Director's opinion that the tree was in a declining state, or was slowly dying, was based upon a layperson's experience and knowledge, as he testified that he had no specialized training in evaluating trees. Based on this evidence, there is a jury question as to whether the decay was visible and apparent such that the City knew or should have known that the tree was diseased and, as a result, whether the City was liable for breaching its duty to remove it. See *Wesleyan College*, supra, 238 Ga. App. at 90, 93-94 (a) - (c) (four-foot-long cavity in a ninety-four-foot-tall pine tree that was observable to a layperson and signs of nearby blighted trees raised a jury question as to whether the landowner knew or should have known about a diseased and dangerous tree and whether the landowner breached a duty to remove the hazard); cf. *City Council of Augusta v. Hammock*, 85 Ga. App.

7

554, 560-561 (4) (b) (69 SE2d 834) (1952) (it was a question for the jury to determine whether the city had exercised ordinary care in failing to discover and remove a large dead limb that fell from a tree and struck a pedestrian). Accordingly, the trial court did not err in denying the City's motion for summary judgment.

*Judgment affirmed. Andrews, P. J., concurs specially. Branch, J., concurs in judgment only*.

A15A0442.  THE CITY OF FITZGERALD v. CARUTHERS.

ANDREWS, Presiding Judge, concurring specially.

I agree with the majority opinion that the trial court correctly denied the City of Fitzgerald's  motion for summary judgment on the basis of sovereign immunity because a jury issue exists as to whether the City had inferred or constructive notice of the rotten condition of the tree branch that fell and hit Caruthers.  I concur specially to express disagreement with other conclusions reached by the majority.

"Sovereign immunity applies to municipalities, unless the General Assembly waives it by law. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX." *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (719 SE2d 412) (2011); OCGA § 36-33-1 (a).  The General Assembly has provided for such waiver in OCGA § 36-33-1 (b), which states:  "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable."  "This provision has for more than a century been interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties."  *City of Atlanta v. Mitcham*, 296 Ga. 576, 577-578 (769 SE2d

320) (2015).  As the majority opinion explains, the extent to which the City's sovereign immunity may be waived for the negligent performance of the specific ministerial duty at issue in this case is set forth in OCGA § 32-4-93 (a), which provides as follows:

> A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

*Mitcham*, 296 Ga. at 577, n. 2 (OCGA § 32-4-93 (a) sets forth waiver of municipal sovereign immunity for defects in public roads); *Roquemore v. City of Forsyth*, 274 Ga. App. 420, 423 (617 SE2d 644) (2005) (municipalities generally have a ministerial duty under OCGA § 32-4-93 (a) to keep public roads reasonably safe for travel); see *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 836-837 (165 SE2d 141) (1968). The liability of municipalities for defects in public roads under OCGA § 32-4-93 (a) also extends to public sidewalks. *Hagan v. Ga. Dept. of Transp.*, 321 Ga. App. 472, 478 (739 SE2d 123) (2013).  The reference to defects in OCGA § 32-4-93 (a) refers to the physical condition of the city road or sidewalk and to defects brought about by forces of nature or persons which render the road or sidewalk unsafe for travel. *McKinley v. City of Cartersville*, 232 Ga. App. 659, 660 (503 SE2d 559) (1998).

2

These defects include objects adjacent to and suspended over the city road or sidewalk – including tree branches – which render use of the road or sidewalk hazardous. *Richards v. Mayor & City Council of Americus*, 158 Ga. App. 693, 694 (282 SE2d 122) (1981); *Carter v. Ga. Power Co.*, 204 Ga. App. 77 (418 SE2d 379) (1992). Liability is imposed "for injuries resulting from [these] defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." *Bush v. City of Gainesville*, 105 Ga. App. 381, 383 (124 SE2d 667) (1962); OCGA § 32-4-93 (a).

I agree that deposition testimony from the City's Director of Public Works was sufficient to create a jury issue as to whether, prior to the accident, the City had inferred or constructive notice of the existence of the rotten tree branch which fell off the tree and injured Caruthers while he was standing at the curb of the public road. The Director testified that he went to the accident scene immediately after the accident occurred, saw the tree at issue, and saw "a rotten limb" from the tree laying in the road. The Director testified that, although the tree was not dead, "it was in a declining state[;] [t]here were some rotten limbs up in the top of it[;] and I felt like it was best just to go ahead and remove any further hazard." Based on these observations, the Director ordered that the tree be cut down. Although the City "ha[d]

3

no duty to check limbs overhanging a public road for non-visible rot," (*Carter*, 204 Ga. App. at 78), there was evidence of visible rot in this case which created a jury issue as to whether the hazard had existed for a sufficient length of time for notice to be inferred.

Contrary to the majority opinion, there is no evidence in the record that, prior to the accident, the City had actual notice of the hazard created by the rotten branch. The City's "lack of documentation," as noted in the majority opinion, was not evidence of actual notice by the City and did not create a jury issue as to actual notice. The trial court erred by finding there was a jury issue as to whether the City had actual notice of the hazard, and by denying the City's motion for summary judgment (asserting sovereign immunity) on this ground. The trial court correctly denied the City's motion for summary judgment (asserting sovereign immunity) by concluding that a jury issue existed as to whether the City had inferred or constructive notice of the hazard. Accordingly, the trial court's denial of the City's motion for summary judgment should be affirmed under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

Finally, the majority opinion wrongly concludes that the City had the burden of proof in moving for summary judgment on the basis of sovereign immunity.

> Sovereign immunity is not an affirmative defense (see OCGA § 9-11-8 (c)) that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the [City], and the waiver must be established by the party seeking to benefit from the waiver.

*Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (434 SE2d 488) (1993), overruled on other grounds in *Hedquist v. Merrill Lynch &c., Inc.*, 272 Ga. 209, 211 (528 SE2d 508) (2000). In response to the City's motion for summary judgment on the basis of sovereign immunity, Caruthers had the burden to show a waiver of the City's immunity. *Bartow County v. Southern Dev. III, L.P.*, 325 Ga. App. 879, 882 (756 SE2d 11) (2014). The trial court correctly denied the City's motion for summary judgment because, as set forth above, Caruthers carried his burden by producing evidence sufficient to establish a factual issue as to whether the City had inferred notice of the hazard.