**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 10, 2023**

# In the Court of Appeals of Georgia

A22A1166. DAVIS et al. v. GREENSBORO ESTATES, LLC et al.

McFADDEN, Presiding Judge.

In the early morning on September 17, 2020, an oak tree fell and destroyed a mobile home leased to William Davis in a mobile home park owned by Greensboro Estates, LLC. Several occupants of the mobile home, including Davis, were injured in the incident. Those persons brought this action against Greensboro Estates and Syed Hashim, who had an ownership interest in Greensboro Estates and managed the mobile home park. The plaintiffs asserted claims for simple and gross negligence and misrepresentation, and they sought to recover for damage to and loss of property, personal injury, and mental pain and suffering. They also sought punitive damages and attorney fees and costs.

Greensboro Estates and Hashim moved for summary judgment, and the trial court granted that motion. As to the claims for simple and gross negligence, the trial court held that there was no evidence that the defendants knew or should have known that the tree "constituted a dangerous condition." As to the misrepresentation claim, the trial court held that there was no evidence either that the defendants made a false representation or that the plaintiffs had reasonably relied on such a representation. The plaintiffs appeal from that order.

As detailed below, a genuine issue of material fact exists as to the defendants' knowledge of the existence of a dangerous condition posed by the tree, so we reverse the grant of summary judgment on the claims for simple and gross negligence. But there is no evidence that the defendants provided false information to the plaintiffs that would be actionable under a theory of negligent misrepresentation, so we affirm the grant of summary judgment on that claim. Finally, we reverse the trial court's implicit grant of summary judgment on the plaintiffs' derivative claims for punitive damages and attorney fees and costs.

1. *Facts.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

2

there is no genuine issue of material and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). A defendant may demonstrate that he is entitled to summary judgment

> by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable burden.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). We review the grant of summary judgment de novo, and we "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." Id. at 624 (1) (a) (citation and punctuation omitted).

So viewed, the evidence shows that Davis leased a mobile home in a mobile home park owned by Greensboro Estates. Under the parties' lease, Greensboro Estates was responsible for maintaining the mobile home park. Hashim was a partial owner of an entity that in turn was a partial owner of Greensboro Estates, and he

3

acted as the off-site manager of the mobile home park. Greensboro Estates employed an on-site manager, Lashonrita Cheeley, who lived in the mobile home park and was responsible for day-to-day maintenance. Cheeley reported all resident complaints to Hashim.

Davis's mobile home was located near a number of trees, which had limbs overhanging the mobile home. A dry creek and hill were behind the mobile home, and rain water often drained into the area and collected in the back yard of the mobile home, near the trees.

This action arises from an incident in September 2020, when a large oak tree fell on Davis's mobile home. But there is evidence in the record of two prior instances in 2020 in which large limbs fell from the same tree, causing personal injury and property damage.

In January 2020, a large limb — approximately 20 feet long and 15 inches wide — broke off the tree and fell on Davis's mobile home, crashing through the roof and through his bedroom ceiling while Davis and his wife were lying in bed. Davis was injured in this incident; he went to the hospital in an ambulance and suffered recurring physical problems from it.

After the January 2020 incident, Hashim and Cheeley met with Davis and other members of his family, including Davis's adult daughter, Jacquelyn Braddy, who also lived in the mobile home. They discussed the condition of the tree that had dropped the limb and surrounding trees. Hashim told Davis that the tree was dangerous. Hashim also stated that he was going to remove all dangerous trees near the mobile home.

Hashim and Cheeley inspected the trees near Davis's mobile home and marked several for removal, including the tree from which the limb had fallen. Cheeley also expressed concerns about the safety of the trees to Hashim. She and Hashim discussed the issue many times. Shortly after the January 2020 incident, Hashim told Cheeley that he was "going to get someone down to cut some of the trees." He asked Cheeley to provide him with quotes from tree removal services.

On several occasions after the first limb fell, Braddy told Cheeley that she thought the tree at issue was a problem and that the trees near the mobile home needed to be addressed to prevent other injuries. Cheeley told Braddy that "she was going to get to [the trees she and Hashim had marked] because there was a danger." Cheeley assured Braddy that she "knew the trees were bad," that she had told Hashim that they needed to be addressed, and that they were on Hashim's list of things to do.

But Hashim did not have the previously marked trees removed at that time, and in late July 2020 another large limb fell from the same tree, landing on two vehicles near Davis's mobile home, blocking a door to the mobile home, and damaging the mobile home. Cheeley informed Hashim of this incident and told him that the occupants of Davis's mobile home were "super scared."

After that exchange, in August 2020, other trees fell on two other mobile homes near Davis's mobile home, damaging one and destroying the other. Hashim then arranged for some trees near that damaged mobile home to be removed, but he did not remove any of the marked trees near Davis's mobile home, including the tree from which the two large limbs had fallen.

Others in the neighborhood expressed concerns about the safety of the tree that had dropped the limbs on Davis's mobile home. Braddy noticed the tree leaning and swaying. Shortly before the tree fell, one of Davis's grandchildren also saw it swaying in the wind. She pointed the swaying out to another person, who replied, "that's going to be the next tree."

Early in the morning on September 17, 2020, when the occupants of Davis's mobile home were in bed, the tree uprooted and fell onto the mobile home. It crashed through the roof and ceiling of the living area, in which three of Davis's

6

grandchildren were sleeping, with such force that it pushed two of the grandchildren through the floor. It also crashed into Braddy's bedroom, badly injuring her and trapping her and her young child. The tree broke the gas main, and some of the occupants of the mobile home had to escape through broken windows as gas and insulation filled the air. The mobile home was destroyed, along with some of the occupants' personal property. Several of the occupants suffered physical injuries and some were taken to the hospital in an ambulance. Some occupants have experienced ongoing mental distress since the incident.

On the day the tree fell, strong weather caused by a hurricane had passed through parts of the state of Georgia. But while it had been raining heavily at the mobile home park, it had not, in Davis's words, been "storming" and it was not windy when the tree fell. There was, however, a substantial amount of water in the back yard of the mobile home.

In January 2021, a certified arborist analyzed remnants of the tree that fell on September 17, 2020. He found no evidence of decay, rot, or other damage and opined that the tree "was overall healthy at the time it fell" and that it fell due to a combination of oversaturated soil and strong winds caused by the hurricane.

2. *Negligence claims.*

The plaintiffs argue that the trial court erred in granting summary judgment to the defendants on their claims for simple and gross negligence. We agree.

Ordinary rules of negligence govern tort actions for liability involving trees. See *Wesleyan College v. Weber*, 238 Ga. App. 90, 93 (517 SE2d 813) (1999); *Willis v. Maloof*, 184 Ga. App. 349, 350 (2) (361 SE2d 512) (1987). "The owner of a tree is liable for injuries from a falling tree only if he knew or reasonably should have known that the tree was diseased, decayed, or otherwise constituted a dangerous condition." *Ga. Dept. of Transp. v. Smith*, 314 Ga. App. 412, 416 (2) (724 SE2d 430) (2012) (citations and punctuation omitted), overruled in part for other reasons by *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016). But if the owner has such knowledge, then he has a duty to remove the danger. See *City of Fitzgerald v. Caruthers*, 332 Ga. App. 731, 734 (774 SE2d 777) (2015) (physical precedent); *Klein v. Weaver*, 265 Ga. App. 390, 392 (593 SE2d 913) (2004) (discussing this principle in the context of a decayed tree).

The defendants argue that they did not have the necessary actual or constructive knowledge for liability on the negligence claims. Their argument has two facets. They argue that there is no evidence that the tree was, in fact, diseased, decayed, or that it otherwise constituted a dangerous condition. And they argue that,

even if the tree did constitute a dangerous condition, there is no evidence that they had actual or constructive knowledge of that fact. (They do not make arguments on appeal as to any other element of the negligence claims, nor do they argue that they are entitled to summary judgment under theories of "equal knowledge" or "assumption of the risk.")

(a) *There is evidence that the tree "otherwise constituted a dangerous condition."*

In support of their argument that the tree was not, in fact, in a "dangerous condition" when it fell, the defendants point to the arborist's expert opinion that the tree was healthy, to appellant Davis's deposition testimony about whether the tree was dangerous, and to the lack of evidence that the tree had visible signs of decay or disease. We are not persuaded by these arguments.

The arborist's opinion does not compel a conclusion that the tree was not in a dangerous condition. The plaintiffs were not required to produce contrary expert evidence to avoid summary judgment. See *Self v. Exec. Committee of Ga. Baptist Convention*, 245 Ga. 548, 549 (266 SE2d 168) (1980). And, as discussed below, there is evidence from which the jury could reach a different conclusion.

9

Likewise Davis's deposition testimony is not dispositive. As the defendants argue, Davis testified that he never said the tree was dangerous and responded "no" when asked if he thought it was dangerous. But he made those statements in the course of testifying that *Hashim* had told *him* that the tree was dangerous. For example, he testified, "I ain't said nothing about the tree was dangerous. He said it." And when asked, "Is it your testimony you never said the tree was dangerous but it was Syed [Hashim] that said they were dangerous," Davis responded, "Yeah. He said it was dangerous and my whole family and everybody was scared because he never did do what he said he was going to do by cutting them down." "Considered in the context of [Davis's] deposition as a whole, . . . it is obvious that [Davis's] statements in [his] deposition are not tantamount to an admission that the [tree did not constitute a dangerous condition]." *Berson v. American Golf Corp.*, 265 Ga. App. 772, 775 (595 SE2d 622) (2004).

It is true, as the defendants argue, that there is no evidence that the tree showed visible signs of disease or decay before it fell. But a tree may "constitute a dangerous condition" even if it is not diseased or decayed. See *Ga. Dept. of Transp.*, 314 Ga. App. at 416 (2) (a tree owner may be liable if he knew or reasonably should have known that the tree "was diseased, decayed, *or otherwise* constituted a dangerous

10

condition) (citations and punctuation omitted; emphasis supplied). And there is evidence in this case that could support a finding that the tree was dangerous, notwithstanding the lack of visible disease or decay. There is evidence that runoff from a nearby slope often caused water to gather around the base of that tree and others in its vicinity, and that the tree was in standing water when it fell. Indeed, the certified arborist opined that oversaturated soil likely was a reason the tree fell. And there is evidence that in the nine months before it fell, the tree dropped two limbs causing property damage and physical injury, and evidence that nearby trees subject to the same soil conditions had also dropped limbs or fallen, causing property damage. See generally *Wesleyan College*, 238 Ga. App. at 94 (b) (recognizing that a tree constituting a dangerous condition might be within a "problem area" of similarly situated trees). And there is evidence that shortly before it fell, the tree was observed swaying, causing one observer to predict it would be the next to fall. Even though the certified arborist opined that the tree was "healthy," we cannot say that no reasonable finder of fact could conclude, from this evidence, that the tree constituted a dangerous condition.

It is true that evidence a tree previously had dropped limbs or had been leaning and swaying will not support a finding that a person without special expertise had

constructive knowledge of a dangerous condition. See *Ga. Dept. of Transp.*, 314 Ga. App. at 417 (2); *Klein*, 265 Ga. App. at 392. But the defendants cite no authority, and we know of none, for the proposition that such evidence may not be considered on the separate issue of whether the tree was, in fact, dangerous. The evidence in this case, although strongly disputed by the defendants in some regards, creates a jury question on that issue.

(b) *There is evidence that the defendants knew that the tree "constituted a dangerous condition."*

In addition, the plaintiffs have pointed to some evidence that, before the tree fell, the defendants had actual knowledge that it was dangerous. Crucially, Davis testified that, after the first limb fell on the mobile home and sent him to the hospital in January 2020, Hashim told him that the tree was dangerous and that it would be removed. Hashim's statement that the tree was dangerous is evidence of his actual knowledge that the tree constituted a dangerous condition. There is also evidence that Cheeley had actual knowledge that the tree was dangerous, which could be attributed to her employer, Greensboro Estates. See *Johnson Street Properties v. Clure*, 302 Ga. 51, 54 (1) (a) (i) (805 SE2d 60) (2017). That evidence shows that Cheeley, the mobile home park's on-site manager, recognized the dangerous condition of the tree and

12

expressed concerns about its safety to Hashim and others. In addition, there is evidence that Hashim and Cheeley together marked that tree, among others in its vicinity, for removal due to safety considerations.

This evidence creates a question of fact as to the defendants' *actual* knowledge that the tree constituted a dangerous condition, which would impose upon the defendants a duty to remove the danger. See *City of Fitzgerald*, 332 Ga. App. at 734 (physical precedent); *Klein*, 265 Ga. App. at 392. Consequently, the absence of evidence of constructive knowledge — such as evidence that the tree had disease, decay, or another defect noticeable to a reasonable layperson — is not dispositive. See generally *City of Fitzgerald*, supra (physical precedent) (the owner of a tree has constructive knowledge of its dangerous condition if a layperson should have known of that condition, but the owner has no duty to inspect the tree absent visible, apparent, and patent decay); *Ga. Dept. of Transp.*, 314 Ga. App. at 416 (2) (distinguishing between a landowner with actual knowledge of a tree's danger, who has a duty to eliminate the danger, and a landowner without actual knowledge, who "is only charged with knowledge of the dangerous condition of the tree if a layman should have reasonably known" of it).

For these reasons, we find that there is a genuine issue of material fact as to whether the defendants knew that the tree constituted a dangerous condition. Because the defendants have asserted no other basis for summary judgment on the negligence claims, we reverse the grant of summary judgment as to those claims.

Given this disposition, we do not reach the plaintiffs' alternative argument that the defendants have liability pursuant to a landlord's duty to keep the premises in repair. See OCGA § 44-7-13. We also do not reach the plaintiffs' alternative argument that the defendants have liability pursuant to decisions of this court that apply OCGA § 44-7-14, which governs a landlord's liability when an injury arises on tenant-possessed property. But see *Chum v. ECI Mgmt. Corp.*, 311 Ga. 170, 176 (2) (a) (856 SE2d 267) (2021) ("If the dangerous condition that ultimately causes an injury is located in an area that the landlord still possesses, . . . OCGA § 44-7-14 does not apply by its own terms.").

3. *Misrepresentation claims.*

In their complaint, the plaintiffs alleged that the defendants had "intentionally created a legally actionable misrepresentation on which the [p]laintiffs were justifi[ed] in relying[.]" The briefing and the state of the record as to those claims require us to first inquire whether we can reach their merits. We conclude that we can

14

reach the merits but that the alleged misrepresentations upon which the plaintiffs rely — Hashim's promise that he would take down the tree — cannot sustain those claims. There is no evidence that Hashim made that promise with the present intention not to perform. So the plaintiffs cannot establish an essential element of their cliam. They cannot show that the defendants provided them with false information.

The parties' summary judgment briefing on this claim was minimal; the defendants perfunctorily argued that the claim could be resolved on the same grounds as the claims for simple and gross negligence, and the plaintiffs did not address the issue at all in their primary brief in opposition. In a supplemental brief to the trial court, the plaintiffs argued that they based this claim on allegedly negligent misrepresentations by Hashim that the trees would be removed. Although the trial court struck that supplemental brief, the trial court nevertheless analyzed the merits of the negligent misrepresentation claim in her order granting summary judgment to the defendants. And the plaintiffs have briefed the merits of this issue on appeal. (The defendants, on appeal, again argue merely that the issue may be resolved on the same grounds as simple or gross negligence. )

So we turn to the merits. Where the trial court and the parties have addressed the merits of this claim, they have treated it as falling within a line of cases that flow

15

from our Supreme Court's decision in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983). In *Robert & Co.*, the Court followed the rule

> enunciated in Restatement of Torts 2d, § 552[, under which] one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used.

Id. at 681-682.

As a preliminary matter we note that § 552 does not apply here; the applicable provision is § 311. Section 552 addresses liability of "[o]ne who . . . supplies false information for the guidance of others in their business transactions[.]" Restatement (Second) of Torts § 552 (1) (1977). It "is concerned only with pecuniary loss suffered as the result of a negligent misrepresentation." Restatement (Second) of Torts § 311 (1965), comment c (contrasting § 552 with § 311). Section 311 applies where, as here, "the harm which results is bodily harm to the person, or physical harm to the property of the one affected." Id.

16

The substantive difference between those two provisions does not affect our analysis. (It is that potential liability under § 311 is broader than under § 552 in that one can be liable under § 311 for gratuitous advice. See Restatement (Second) of Torts § 311 (1965), comment (c).) Specifying the applicable provision is important to our analysis only in regard to citation of Restatement provisions in opinions of the Georgia appellate courts.

Our Supreme Court has not issued a majority opinion that follows the rule enunciated in § 311, as it did with § 552 in *Robert & Co.*, 250 Ga. at 681-682. But § 311 has been cited in a Supreme Court concurring opinion. *Sun Trust Banks v. Killebrew*, 266 Ga. 109, 113 (2) (464 SE2d 207) (1995) (Sears, J., concurring specially). And this court has cited § 311 as authority for a cause of action for negligent misrepresentation involving physical harm. See *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 681 (3) (472 SE2d 504) (1996) (physical precedent), vacated by *Sun Trust Banks v. Killebrew*, 1996 Ga. LEXIS 1047 (Case No. S96C1599, decided Oct. 7, 1996); *Thompson v. Hardy Chevrolet-Pontiac-Buick*, 203 Ga. App. 499, 502-503 (1) (417 SE2d 358) (1992).

And under either section, the plaintiffs must show that the defendants provided them with false information. See *Hardaway Co.*, 267 Ga. at 426 (1) (action falling

17

under rule in § 552); *Thompson*, 203 Ga. App. at 502 (1) (action falling under rule in § 311). In considering this element, we may look to cases involving fraudulent representations, because "the same principles apply to both fraud and negligent misrepresentation cases and . . . the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *Holmes v. Grubman*, 286 Ga. 636, 640-641 (1) (691 SE2d 196) (2010) (citations and punctuation omitted).

The allegedly false information upon which the plaintiffs base their claim is the promise made by Hashim that he would take down the tree. "[F]uture promises are not sufficient to sustain fraud-based claims[,]" *Novare Group v. Sarif*, 290 Ga. 186, 189 (2) (718 SE2d 304) (2011), unless they are made "with the present intention not to perform or with the knowledge that the future event would not occur." *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 152 (2) (304 SE2d 365) (1983). The plaintiffs point to no evidence, and we have found none, showing that at the time Hashim promised to remove the tree he had no intention of doing so or knew that the tree would not, in fact, be removed. Instead, there is undisputed evidence that even though Hashim did not remove the tree, he took steps to do so, such as asking Cheeley to get quotes from tree services. For this reason, we agree with the trial court

that there is no genuine issue of material fact as to a false representation and so the defendants are entitled to summary judgment on the claim for negligent misrepresentation.

4. *Claims for punitive damages and attorney fees and costs.*

The defendants argued below that they were entitled to summary judgment on the plaintiffs' derivative claims for punitive damages and attorney fees and costs for the same reason that they argued they were entitled to summary judgment for the simple and gross negligence claims — because there was no evidence that the defendants knew or should have known that the tree constituted a dangerous condition. Because the defendants have not argued that they are entitled to summary judgment on the derivative claims even if the negligence claims survive summary judgment, we also reverse the trial court's implicit grant of summary judgment on the derivative claims.

*Judgment affirmed in part and reversed in part. Gobeil and Land, JJ., concur.*