Ray, Judge.
Jonathan Bryant, an inmate at the Muscogee County Prison, was actively participating on a work crew assigned to the Columbus Parks and Recreation Department when he was injured by a lawn mower. Bryant filed suit against Michael Cooley, the correctional officer supervising the crew, in his individual and official capacities, for the injuries Bryant sustained. Cooley filed a motion for summary judgment, arguing that Bryant’s claims against him were barred by the doctrines of sovereign immunity and official immunity. Finding that Bryant’s claims against Cooley in his official capacity were barred by the doctrine of sovereign immunity, the trial court granted his summary judgment motion in part. However, the trial court denied Cooley’s summary judgment motion as to Bryant’s claims against him personally. The trial court found that Cooley’s acts of maintaining and inspecting the lawn mower were ministerial, not discretionary, and that Bryant’s claims against him were not barred by the doctrine of official immunity. The trial court certified its order for immediate review, and this Court granted Cooley’s petition for interlocutory review. We affirm the trial court’s denial of Cooley’s summary judgment motion, but remand the case to the trial court for a jury to determine whether, under the facts of this case, Cooley knew that the lawn mower was defective and presented a dangerous condition, such that his ministerial duty to have the mower repaired would trigger, and if so, all issues related to liability and damages.
Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
*719 (Punctuation and footnotes omitted.) Taylor v. Campbell, 320 Ga. App. 362, 362 (739 SE2d 801) (2013).
The record shows that on May 3, 2006, Bryant, an inmate at the Muscogee County Prison, was assigned to an inmate work detail where he was directed to cut grass at Dinglewood Park in Columbus, Georgia. The detail supervisor was Correctional Officer Cooley. Cooley was responsible for supervising the inmates during the work detail and for ensuring that the equipment they were using was operational. Cooley deposed that he inspected the lawn mowers to ensure that they had oil and gas and that the blades were sharp. If anything needed repair, he would deliver it to the maintenance shop. Cooley would again inspect the equipment in the evening after it had been used to make sure that it was “clean, serviceable, [and] ready for the next day’s work.” There was no written policy or procedure governing Cooley’s inspections or requiring him to inspect the equipment for safety.
On the day of his injury, Bryant was assigned to the task of mowing with a three-wheel push mower. To start the mower, Bryant had to connect the spark plug and pull the crank. The mower’s safety lever had been disconnected at the time he began work that morning. This lever would normally have to be held to start and keep the mower running. Bryant stated that Cooley instructed him to make sure that the spark plug was plugged in when he turned the mower on and that he should hold a zip tie attached to the spark plug to pull the spark plug out if he wanted to turn the mower off. Further, the safety flap on the side of the mower where the grass shoots out was missing. Bryant also explained that he informed Cooley that the mower assigned to him was meant for flat surfaces, but that Cooley instructed him to mow a hilly area.
Cooley deposed that he had not experienced any previous maintenance issues with that mower, and that he had inspected the mower on the day of Bryant’s injury and confirmed that it had not been altered or changed in any way. However, it was common for inmates hoping to avoid working to “mess” with the equipment. Bryant deposed that it was “common knowledge” that the equipment given to the inmates to perform their work duties was “half crap” and that guards did not seriously consider complaints from other inmates regarding equipment safety.
On the date at issue, the inmate crew was finishing up their work at the park when Bryant’s accident occurred. Bryant pushed the mower down a hill to cut grass as close to the adjacent ditch as possible when his mower gained so much momentum that he was almost running to stop the mower from escaping his grasp. The three-wheeled mower hit a hole, dug into the ground, and flipped up *720 sideways. Bryant pushed the mower off to the side and tried to jump clear, but his leg hit the portion of the mower where the grass shoots out and was seriously injured. The mower continued to operate during the event because the mower’s safety lever, which would normally automatically shut off the mower in such a situation, was inoperable at the time. Another inmate ran up and pulled the spark plug out to stop the mower.
Bryant filed suit against Cooley individually and in his official capacity for negligent inspection and negligent maintenance of the lawn mower. Cooley filed a motion for summary judgment, arguing, inter alia, that the claims against him in his individual capacity were barred by the doctrine of official immunity. The trial court denied Cooley’s summary judgment motion as to the claims against him personally, finding that Cooley’s inspection and maintenance of the lawn mowers was ministerial and that Bryant’s claims against Cooley were not barred under the theory of official immunity. The trial court issued a certificate of immediate review, and this Court granted Cooley’s application for interlocutory review after finding that it fell under the collateral order doctrine.[1]
1. Cooley contends that the trial court erred in denying his motion for summary judgment as to the issue of official immunity based upon a finding that his inspection and maintenance of the lawn mowing equipment was ministerial, and not discretionary.
The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the *721 public employee’s independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.
(Citations omitted.) Williams v. Pauley, 331 Ga. App. 129, 130 (768 SE2d 546) (2015). Official immunity is an “ ‘entitlement not to stand trial’ rather than a ‘mere defense to liability.’ ” (Footnote omitted.) Cameron v. Lang, 274 Ga. 122, 124 (549 SE2d 341) (2001). Accordingly, as a correctional officer in the Parks and Recreation Division of the Columbus Consolidated Government, Cooley is
entitled to official immunity for the negligent performance of discretionary acts within the scope of his authority as an officer; he may be personally liable if he negligently performed a ministerial act or acted with actual malice or an intent to injure when performing a discretionary act.
(Citations omitted; emphasis supplied.) Williams, supra. Because Bryant does not claim that Cooley acted with actual malice or an intent to injure, the issue is whether the alleged negligence involved discretionary or ministerial action.
The difference between ministerial and discretionary acts has been explained as follows: A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.
(Footnote omitted.) Taylor, supra at 363-364. “Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case.” (Citation and punctuation omitted.) Parrish v. Akins, 233 Ga. App. 442, 443 (1) (504 SE2d 276) (1998).
Cooley deposed that it was his responsibility to make sure the equipment was “operational; make sure there’s oil, gas in it; blades are sharp.” He deposed that he inspected the equipment twice daily to make sure that “it’s clean, serviceable, ready for the next day’s *722 work.” If he did discover a piece of equipment that needed repair, he would take it to the City’s maintenance shop. However, Cooley’s affidavit testimony stated that “[t]here is no written policy or procedure governing the manner in which the mower was to be inspected[.]” Bryant has pointed to no evidence of a policy, written or unwritten, requiring Cooley to conduct safety inspections in a certain manner. However, both Cooley and Tony Adams, the director of the Columbus Parks and Recreation Department, agreed that there was an unwritten policy in the Department that a correctional officer has a duty to take defective equipment to the maintenance shop when it required maintenance.
The evidence shows that a cursory examination of the lawn mower would have revealed that the lawn mower at issue was in need of repair: the flap covering the grass shootout was missing, the spark plug had to be connected to start the mower, the safety lever meant to shut off the mower was not operational, and in order to shut the mower off and disengage the blade, the spark plug had to be removed by means of a zip tie. The record also contains a question of fact as to whether Cooley was aware of these issues: Bryant deposed that Cooley instructed him to turn the lawn mower off using the zip tie attached to the spark plug, and Cooley deposed that the mower did have a kill switch.
Cooley argues that his inspection of the lawn mower was discretionary because there is no policy or procedure governing how he conducted such inspections. Even in the absence of such a policy, however, there is evidence in the record that Cooley was aware that the lawn mower had several defects in its safety features, and once he became aware of such safety issues, there is evidence of an unwritten policy requiring him to take the faulty lawn mower to the maintenance shop for repairs. The duty to take defective machinery to the maintenance shop for repairs clearly constitutes a ministerial act. Cooley’s duty under the Department’s policy was simple: to deliver defective equipment to the maintenance shop.
Where the relevant facts pertaining to official immunity are in dispute, resolution of the factual issues is for the jury. Eshleman v. Key, 326 Ga. App. 883, 888 (755 SE2d 926) (2014) (cert. granted on September 8, 2014 to decide the issue of whether OCGA § 51-2-7 created a ministerial duty). In Eshleman, an off-duty police canine handler failed to properly secure a department-owned canine in the back of a pickup truck, and the canine got loose and bit a child playing nearby. This Court held that there was evidence sufficient to create a question of fact as to whether the officer knew the dog to be dangerous or vicious. If the officer had such knowledge, then she was bound by *723 a ministerial duty imposed by a statute governing “vicious or dangerous animals” to keep the dog properly restrained. Similarly, here, there is evidence that Cooley was bound by a ministerial duty to take the lawn mower to the maintenance shop once he realized that it needed repair. A question of fact to be decided by the jury then is this: whether Cooley did, in fact, have knowledge that the lawn mower was defective and needed repair, such that the ministerial duty to take it for repair kicked in.
This Court’s opinion in Glass v. Gates, 311 Ga. App. 563, 564-566, 574-576 (2) (716 SE2d 611) (2011), supports our holding. In Glass, an inmate was killed during a prison work detail supervised by a correctional officer. Plaintiff presented evidence of unwritten departmental policies requiring a detail supervisor to contact the work camp and request a service truck for assistance in the event a tractor got stuck in a ditch, and requiring a laborer to be at least 50 feet behind an operating tractor at all times. The evidence showed that the defendant detail supervisor violated these unofficial policies when instructing the inmate to attempt to remove a tractor stuck in a ditch, and the inmate subsequently died of injuries sustained during that attempt. This Court held that a grant of summary judgment was in error because, in light of the plaintiff’s evidence regarding the unwritten departmental policies, there was a question of fact as to whether there was actually an established policy and, thus, whether the correctional officer’s act was discretionary or ministerial. Similarly, here, there is a fact question as to whether Cooley was aware that the lawn mower was in need of repair, and if so, then he is bound to comply with the unwritten Department policy requiring him to complete the ministerial act of delivering the lawn mower to the maintenance shop for repair.
The dissent contends that even if Cooley knew that the kill switch was disabled, that he nonetheless engaged in a discretionary act in failing to take it to the maintenance shop for repair. We disagree. Both Cooley and Adams, the director of the Parks and Recreation Department, agreed that once a lawn mower’s safety or kill switch is disconnected or rendered inoperable, it becomes a dangerous piece of machinery. Thus, if the jury concludes that Cooley was aware of this defect, then the unwritten department policy merely dictated that he complete a simple task: that is, to take the lawn mower to the maintenance shop for repair.
2. Cooley’s remaining enumeration is without merit.

Judgment affirmed in part and case remanded.

Barnes, P. J., and Branch, J., concur. McFadden, J., concurs fully and specially. Doyle, P. J., concurs in judgment only. Andrews, P. J., and Boggs, J., dissent.

 Official immunity, like sovereign immunity, “is an entitlement not to stand trial rather than a mere defense to liability.” (Citation and punctuation omitted.) Taylor, supra at 363, n. 3. The Court of Appeals “has held that an order denying such an immunity claim is appealable under the collateral order doctrine order because the order conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.” (Citation and punctuation omitted.) Id.