**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0566. VIDAL v. LEAVELL.

RAY, Judge.

Ashley Leavell filed a complaint against Officer Jose Vidal, Southern Restaurant Management, Inc. d/b/a International House of Pancakes, and Buckhead IHOP, Inc., alleging that Officer Vidal, an off-duty officer hired to provide security at an IHOP restaurant, used excessive force when arresting her. Officer Vidal filed this direct appeal pursuant to the collateral order doctrine[1] seeking review of the trial

---

[1] Official immunity, like sovereign immunity, "is an entitlement not to stand trial rather than a mere defense to liability." (Citation and punctuation omitted.) *Taylor v. Campbell*, 320 Ga. App. 362, 363, n. 3 (739 SE2d 801) (2013). Our appellate courts have

held that an order denying such an immunity claim is appealable under
the collateral order doctrine because the order conclusively determines
the disputed question, resolves an important issue completely separate

court's denial of his motion for summary judgment filed on official immunity grounds. For the following reasons, we reverse the denial of his summary judgment motion.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Punctuation and footnotes omitted.) *Taylor*, supra at 362.

The record shows that in the early morning hours of April 23, 2011, Leavell and a friend went to the Buckhead IHOP after having drinks at a bar. After being seated, Leavell noticed Officer Vidal approach a nearby booth and begin to speak to a group of young women seated there. Leavell stated in her affidavit that "I could not

from the merits of the action, and is effectively unreviewable on appeal from a final judgment.

(Citation and punctuation omitted.) Id. Leavell's motion to dismiss on the grounds that this appeal did not fall under the collateral order doctrine is denied. See *City of Atlanta v. Shavers,* 326 Ga. App. 95, 97 (2) (a) (756 SE2d 204) (2014).

2

hear what was being said, but I saw the officer force himself into their booth and begin pushing two of the women into the wall with the full weight of his body as the women screamed hysterically." Officer Vidal was engaged in an attempt to arrest the IHOP patrons in the booth. Leavell testified that she began to video the scene with her cell phone because she believed the officer was acting too aggressively. Officer Vidal instructed the women in the booth, and all those around him, to stop touching him. After another officer arrived and appeared to be engaged in stopping the officer from his interactions with the women, Leavell testified that she grabbed Officer Vidal's shoulder "to get his attention so he would see that [she] was videoing him[,]" and Officer Vidal slapped her in the face. Video footage of the incident reveals that Leavell then violently swung at the officer several times before another officer grabbed her arm.[2] As the other officer was holding her arm, Officer Vidal punched Leavell on the side of the head. Officer Vidal then "threw [Leavell] to the floor, dragged [her] to the front entrance, and handcuffed" her. Leavell was placed under arrest for obstruction and assault. An ambulance was called, and Leavell was

---

[2] Although Leavell and Vidal's recitations of the events differ to a degree as to the characterization of Leavell's first instance of touching the officer and her subsequent swings at him, this Court must rely upon facts as depicted by the videotape. See *Scott v. Harris*, 550 U. S. 372, 378-381 (III) (A) (127 SCt 1769, 167 LE2d 686) (2007).

evaluated at the hospital. After the incident, Leavell learned that other IHOP customers had videoed the incident and uploaded the videos to YouTube.com.

Leavell filed suit against Officer Vidal for, inter alia, battery, negligence and unconstitutional arrest using excessive force. Officer Vidal filed a motion for summary judgment alleging that the claims against him were barred by the doctrine of official immunity. Without making any findings of fact or conclusions of law, the trial court denied the motion.

Officer Vidal contends that no question of material fact exists as to whether his actions against Leavell were done with malice or with an intent to injure her and, thus, the trial court erred in denying his summary judgment motion on the grounds of official immunity. We agree.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with *malice or an intent to injure*. The rationale for this immunity is to preserve the public employee's independence of action

4

without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Citations omitted; emphasis supplied.) *Williams v. Pauley*, 331 Ga. App. 129, 130 (768 SE2d 546) (2015). Leavell does not dispute that Officer Vidal was engaged in a discretionary act when arresting her, but she argues that he acted with actual malice in striking her and forcibly arresting her. See *Valades v. Uslu*, 301 Ga. App. 885, 890 (2) (689 SE2d 338) (2009). (2) ("arresting a person for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury") (punctuation and footnote omitted).

To prove that Officer Vidal acted with actual malice or an intent to injure, Leavell must show more than the officer's ill will towards her. Rather, Leavell "must show that [Officer Vidal] acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm her." (Citations omitted.) *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002) Georgia Courts have distinguished this actual malice from "implied malice, which . . . had been defined to mean conduct exhibiting a reckless disregard for human life." (Punctuation and footnote omitted.) *Phillips v. Hanse*, 281 Ga. 133, 135 (2) (637 SE2d 11) (2006).

5

*Selvy v. Morrison*, 292 Ga. App. 702 (665 SE2d 401) (2008), is instructive in determining what constitutes malice in the context of an arrest for the purposes of qualified immunity. In *Selvy*, the plaintiff alleged that she was brutally treated when she was arrested for disorderly conduct. The plaintiff alleged that police officers had come to her house to arrest her fiancé. After they had done so, she used profanity when demanding that they leave her house and locked the door behind them. The officers, also using profanity, decided to arrest her as well and threatened to break down her door if she refused to open it. When she opened the door, the officers grabbed her arm, twisted it behind her back and slammed her face into the wall. An officer kicked her legs out from under her, and in the process, kicked her ten-year-old son in the mouth. Id. at 702-704.

In affirming the trial court's grant of summary judgment to the officers, this Court rejected Selvy's claim that the officers acted with actual malice. We held that

> [i]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be in the intent to cause the harm suffered by the plaintiffs. Likewise, the phrase "actual intent to cause injury" has been

6

defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

(Punctuation and footnotes omitted.) Id. at 704-705. We concluded that "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." (Punctuation and footnotes omitted.) Id. at 706. Although the officers "may have shown poor judgment . . . and reckless disregard for the rights and safety of others[,]" id. at 705, there was no evidence of actual malice when officers were at the plaintiff's home to effectuate a valid arrest warrant for her fiancé, there was evidence to support her arrest for disorderly conduct, and because "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion[.]" (Punctuation and footnotes omitted.) Id. at 706.

Similarly, in *Tittle v. Corso*, 256 Ga. App. 859, 860-862, 862-863 (1) (569 SE2d 873) (2002) (whole court), this Court held that an officer's threats, use of profanity, and act of slamming a motorist against his vehicle were insufficient to establish actual malice. In *Valades*, supra, this Court held that an officer did not

exhibit actual malice when he, after arguing with plaintiffs during a traffic stop, pulled one plaintiff's hair, lifted her up while handcuffed so as to cause soreness in her shoulder and pointed a weapon at her neck, or when the officer asked the other plaintiff if he wanted to die and kicked him in the knee because the officer's actions showed an effort to restrain an uncertain situation rather than a deliberate intent to commit a wrongful act. Id. at 886-887, 892 (2).

"Police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." (Punctuation and footnote omitted.) *Valades*, supra at 891-892 (2). Accord *Tittle*, supra at 863 (1) ("The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it") (punctuation and footnote omitted). Although we do not condone the officer's actions in this case, we do not find that the evidence creates a jury question concerning whether Officer Vidal exhibited actual malice towards Leavell. Leavell does not dispute that Officer Vidal was engaged in an attempt to arrest an IHOP patron who refused to leave the premises when Leavell came over to videotape the scene. Officer Vidal testified that Leavell's arrest was based on simple assault and obstruction because she was "grabbing on" him while he

8

was attempting to arrest another IHOP patron and because she swung at him several times. "[O]ur task is not to decide, with the benefit of hindsight, what [Officer Vidal] should have done. We are concerned only with whether [his] behavior showed a deliberate intention to commit a wrongful act." (Punctuation and footnote omitted.) *Selvy*, supra at 707. Because there was no evidence to support a finding of actual malice, the trial court erred in concluding that Officer Vidal was not entitled to official immunity and in denying Officer Vidal's motion for summary judgment.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur*.