In the Supreme Court of Georgia

Decided: March 25, 2016

S15G0887. RIVERA v. WASHINGTON.

S15G0912. FORSYTH COUNTY v. APPELROUTH et al.

HINES, Presiding Justice.

This Court granted certiorari to the Court of Appeals in these cases to consider its decisions to dismiss the direct appeals that defendants filed from the trial courts' denials of their motions to dismiss that were based on claims of quasi-judicial and sovereign immunity. Finding that the Court of Appeals reached the correct results in both cases, but did so under flawed analyses, we affirm its judgments.

Although these two cases arose separately, they pose a singular legal issue for this Court's determination, and thus can be addressed in the same opinion. In S15G0887, Akeem Washington, who was on probation for speeding, sued Shannon R. Rivera, a probation officer, and her administrative assistant, alleging that they failed to perform their ministerial duties when they swore out a warrant

for Washington's arrest for failure to pay a fine that Washington already had

paid in fulfillment of the conditions of his probation.  Rivera moved to dismiss

the complaint under OCGA § 9-11-12 (b) (6),[1] asserting that she was immune

from liability in Washington's suit because her alleged actions were protected

by either quasi-judicial immunity or sovereign immunity.  The trial court denied

the motion, ruling that it was possible that facts could be shown in discovery

that would establish that neither quasi-judicial immunity nor sovereign

immunity applied.  Even though the order denying the motion to dismiss meant

---

[1] OCGA § 9-11-12 (b) reads:

(b) How defenses and objections presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion in writing:
       (1) Lack of jurisdiction over the subject matter;
       (2) Lack of jurisdiction over the person;
       (3) Improper venue;
       (4) Insufficiency of process;
       (5) Insufficiency of service of process;
       (6) Failure to state a claim upon which relief can be granted;
       (7) Failure to join a party under Code Section 9-11-19.

A motion making any of these defenses shall be made before or at the time of pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56.

that the case remained pending in the trial court, Rivera did not attempt to file

an application for interlocutory appeal from that order, see OCGA § 5-6-34 (b),[2]

but filed a notice of appeal, asserting that she had authority to file a direct appeal

under the collateral order doctrine, as that doctrine has been applied in *Board*

*of Regents &c. of Ga. v. Canas*, 295 Ga. App. 505, 506-507 (1) (672 SE2d 471)

(2009). The Court of Appeals, though accepting the collateral order doctrine

embraced in *Canas,* nonetheless dismissed the direct appeal, finding that the

doctrine did not apply, as the trial court failed "to make any conclusive

---

[2] OCGA § 5-6-34 (b), reads:

Where the trial judge in rendering an order, decision, or judgment, not otherwise subject to direct appeal, including but not limited to the denial of a defendant's motion to recuse in a criminal case, certifies within ten days of entry thereof that the order, decision, or judgment is of such importance to the case that immediate review should be had, the Supreme Court or the Court of Appeals may thereupon, in their respective discretions, permit an appeal to be taken from the order, decision, or judgment if application is made thereto within ten days after such certificate is granted. The application shall be in the nature of a petition and shall set forth the need for such an appeal and the issue or issues involved therein. The applicant may, at his or her election, include copies of such parts of the record as he or she deems appropriate, but no certification of such copies by the clerk of the trial court shall be necessary. The application shall be filed with the clerk of the Supreme Court or the Court of Appeals and a copy of the application, together with a list of those parts of the record included with the application, shall be served upon the opposing party or parties in the case in the manner prescribed by Code Section 5-6-32, except that such service shall be perfected at or before the filing of the application. The opposing party or parties shall have ten days from the date on which the application is filed in which to file a response. The response may be accompanied by copies of the record in the same manner as is allowed with the application. The Supreme Court or the Court of Appeals shall issue an order granting or denying such an appeal within 45 days of the date on which the application was filed. Within ten days after an order is issued granting the appeal, the applicant, to secure a review of the issues, may file a notice of appeal as provided in Code Section 5-6-37. The notice of appeal shall act as a supersedeas as provided in Code Section 5-6-46 and the procedure thereafter shall be the same as in an appeal from a final judgment.

3

determination" on the claims of immunity. Rivera applied to this Court for a writ of certiorari, which was granted.

In S15G0912, Dan and Arlene Appelrouth sued their neighbors, Cesar and Janice Rodriguez, also naming Forsyth County and other unknown persons as defendants. The Appelrouths alleged that actions taken on the Rodriguezes' property, as well as on the County's road right of way and associated drainage ditch, caused water damage to the Appelrouths' property, and raised claims of, inter alia, breach of legal duty, negligence per se, trespass, nuisance, and inverse condemnation. The Rodriguezes filed a cross-claim against the County, which filed motions to dismiss both the complaint and cross-claim, asserting sovereign immunity. The trial court denied the motions, ruling that it was possible that evidence could be established which would allow the Appelrouths and the Rodriguezes to prevail against the County's claim of sovereign immunity. The County did not seek an interlocutory appeal from this order, but, like Rivera, filed a notice of appeal from the order denying the motions to dismiss, also citing *Canas*, supra. As in the Rivera case, the Court of Appeals dismissed the direct appeal, finding that the collateral order doctrine embraced in *Canas* did not apply, likewise noting that the trial court had not made a conclusive

determination on the claim of immunity. The County then applied to this Court

for a writ of certiorari, which was granted.

The collateral order doctrine applied in *Canas*, supra, pertains to appellate

review. "OCGA § 5–6–34 (a) (1)[3] authorizes direct appeals only from 'final

judgments [of the trial court], that is to say, where the case is no longer pending

in the court below.'" *Sosniak v. State*, 292 Ga. 35, 36 (2) (734 SE2d 362) (2012)

(Footnote omitted.). When a trial court grants a motion to dismiss based on a

---

[3] OCGA § 5-6-34 (a) reads:

(a) Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state:

> (1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35;
> (2) All judgments involving applications for discharge in bail trover and contempt cases;
> (3) All judgments or orders directing that an accounting be had;
> (4) All judgments or orders granting or refusing applications for receivers or for interlocutory or final injunctions;
> (5) All judgments or orders granting or refusing applications for attachment against fraudulent debtors;
> (6) Any ruling on a motion which would be dispositive if granted with respect to a defense that the action is barred by Code Section 16-11-173;
> (7) All judgments or orders granting or refusing to grant mandamus or any other extraordinary remedy, except with respect to temporary restraining orders;
> (8) All judgments or orders refusing applications for dissolution of corporations created by the superior courts;
> (9) All judgments or orders sustaining motions to dismiss a caveat to the probate of a will;
> (10) All judgments or orders entered pursuant to subsection (c) of Code Section 17-10-6.2;
> (11) All judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders; and
> (12) All judgments or orders entered pursuant to Code Section 35-3-37.

5

defense such as sovereign or quasi-judicial immunity, the case is final and may

be appealed under OCGA § 5-6-34 (a) (1). However, if such a motion is denied,

> the case remains "pending in the court below" and continues on to trial. OCGA § 5–6–34 (a) (2) through (12) authorize direct appeals of 11 specific types of trial court rulings that the General Assembly has deemed important enough to the case, or dispositive enough of the case, to warrant an immediate appeal, even though such rulings are often interlocutory rather than final judgments. But orders related to [defenses such as sovereign and quasi-judicial immunity] are not listed. The usual remedy for a party aggrieved by an order that does not terminate the case in the trial court, and is not authorized for direct appeal by OCGA § 5–6–34 (a) (2)–(12), is to seek a certificate of immediate review from the trial court and then file an application for interlocutory appeal.

*Sosniak*, supra at 37.

As noted, Rivera and Forsyth County did not follow the interlocutory

appeal procedures set forth in OCGA § 5-6-34 (b), but asserted that a direct

appeal was available under the collateral order doctrine. This Court recently

addressed the collateral order doctrine, stating:

> Although sometimes referred to as an exception to statutes allowing a direct appeal only from the final judgment in a case, the collateral order doctrine actually reflects a practical rather than a technical construction of such statutes, one that recognizes that a very small class of interlocutory rulings are effectively final in that they finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate

6

consideration be deferred until the whole case is adjudicated.

*State v. Cash*, 298 Ga. 90, 92-93 (1) (b) (779 SE2d 603) (2015) (Citations and punctuation omitted.). Thus, "an order that satisfies the requirements of the collateral order doctrine is considered to be effectively final and would be appealable because it comes within the terms of a relevant statutory right to appeal final judgments." Id. at 93 (1) (b).

This Court adopted the collateral order doctrine in *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982), recognizing its application to an order denying a plea of double jeopardy. In the civil context, we first applied the doctrine in *Scroggins v. Edmondson*, 250 Ga. 430, 432 (1) (c) (297 SE2d 469) (1982), which concerned an order cancelling a recorded notice of lis pendens; we did so, in part, because nothing remaining in the basic suit could affect the validity of the notice, and cancellation of the lis pendens notice was substantially separate from the issues presented in the basic complaint. Thus, the pretrial order granting the motion to cancel the notice of lis pendens fell "within the small class of cases" for which the collateral order doctrine was appropriate. And, we have applied the doctrine in limited circumstances since. See, e.g., *Warren v. State*, 297 Ga. 810 (778 SE2d 749) (2015) (A pretrial order to involuntarily

7

medicate a criminal defendant in an effort to render him competent to stand trial was directly appealable.); *Fulton County v. State*, 282 Ga. 570, 571 (651 SE2d 679) (2007) (The doctrine was applicable to an order requiring Fulton County to pay expenses associated with the defense of a criminal defendant, which order was entered in the criminal prosecution.); *In re Paul*, 270 Ga. 680 (513 SE2d 219) (1999) (An order directing a reporter to answer questions about his interview with a criminal defendant, entered in connection with the criminal prosecution, could be directly appealed under the collateral order doctrine as it was "a final order concerning him as a non-party" on his claim of reporter's privilege.). But see *Cash*, supra (An order denying the State's motion to recuse the trial judge could not fall under the collateral order doctrine as, in the circumstances presented, there was no statutory authority for such an appeal.).

We have continued to recognize that the collateral order doctrine has application to only "a very 'small class' of interlocutory rulings." *Cash*, supra. See also *Paul*, supra at 682 ("A direct appeal is allowed in this limited situation. . . .")

As noted, Rivera and Forsyth County filed their direct appeals relying upon the opinion of the Court of Appeals in *Canas*, supra. In that case, the

8

Court of Appeals addressed an order in which the trial court had rejected the claim that the Board of Regents had immunity from the suit filed, on the basis of sovereign immunity. Recognizing that the order denying the Board's motion to dismiss was interlocutory, the Court of Appeals, relying largely upon federal cases, applied the collateral order doctrine, and determined that the trial court's order was directly appealable. However, in doing so, the Court of Appeals overlooked the precedent of this Court.

In *Turner v. Giles*, 264 Ga. 812, 813 (1) (450 SE2d 421) (1994), this Court was faced with an attempt to file a direct appeal from the denial of a motion to dismiss in an action under 42 U.S.C. § 1983, based, at least in part, upon a claim of qualified immunity. This Court looked to *Scroggins*, supra, and found that the situation before it was different, as "an order denying a claim of qualified immunity in a § 1983 action is not substantially separate from the issues raised by the complaint." And, this Court specifically declined to adopt the federal rule that would have permitted "a direct appeal from an adverse pretrial determination of the issue of qualified immunity in a § 1983 action." Id. at 813. Indeed, observing that a direct appeal in such a case would be available in the federal courts, we noted that

9

> the jurisdiction of the courts of Georgia is not a federal issue upon which the decision of the Supreme Court of the United States in *Mitchell [v. Forsyth*, 472 U.S. 511, 525 (III) (105 SCt 2806, 86 LE2d 411) (1985)] would be controlling, but derives from the constitutional and statutory law of this state.

*Turner*, supra at 812 (1). And, under Georgia law, this Court determined that an interlocutory order rejecting a claim of qualified immunity is not directly appealable under the collateral order doctrine, but that appeal must be pursued under the interlocutory procedures of OCGA § 5-6-34 (b). Id. at 813-814.[4] Further, at no time since the decision in *Turner* has this Court recognized a direct appeal from a denial of a motion to dismiss based upon any claim of immunity, adhering rather to the statutory scheme for appellate review of interlocutory orders as set out by our General Assembly in OCGA § 5-6-34.[5]

The Court of Appeals did not cite *Turner* in *Canas*, but its flawed analysis

---

[4] It is of no moment that the plaintiff's claim in *Turner*, supra, was based on 42 USC § 1983; whether the defendants had a defense of immunity under the Constitution and laws of Georgia was solely a question of State law. Id. at 814 (2). Nor is it significant that the claim of immunity addressed in *Turner* was qualified immunity rather than the claims of sovereign or quasi-judicial immunity presented by Rivera and Forsyth County; the claims are in the same posture of pre-trial determination, and subsequent appellate review.

[5] In *Judicial Council of Ga. v. Brown & Gallo*, 288 Ga. 294, 296 (n. 6) (702 SE2d 894) (2010), in which this Court had granted a writ of certiorari to the Court of Appeals, we noted that the Court of Appeals had recognized a right of direct appeal under *Canas*, but specified that "[w]e express no opinion on the Court of Appeals's employment of the collateral order doctrine in this appeal."

10

can be seen in the opinion itself. *Canas* cited *Cameron v. Lang*, 274 Ga. 122, 124 (1) (549 SE2d 341) (2001), for the proposition that:

> Under Georgia law, qualified immunity is an entitlement not to stand trial rather than a mere defense to liability. The issue of a government employee's qualified immunity must therefore be resolved as the threshold issue in a suit against the officer in his personal capacity.

*Canas*, supra at 507 (n. 7). But, *Cameron* did not make such a pronouncement about qualified immunity under the laws of this state. Rather, *Cameron* noted that, in the context of qualified immunity under *federal* law, the Supreme Court of the United States found in *Mitchell v. Forsyth*, 472 U.S. 511, 525 (III) (105 SCt 2806, 86 LE2d 411) (1985), that "qualified immunity is an entitlement not to stand trial rather than a mere defense to liability." *Cameron*, supra at 124 (1) (Citation and punctuation omitted.) But, as *Turner* held, state law controls and requires that appeals of non-final orders on claims of immunity must be pursued through the interlocutory procedures of OCGA § 5-6-34 (b). *Turner*, supra at 813-814.

As to *Canas's* reliance upon *Cameron* for the proposition that qualified immunity must be resolved as a threshold issue, it is certainly true that *Cameron* stated:

11

> Because the better policy and practice is to address immunity before causation, we hold that our state courts must consider the issue of a government employee's qualified immunity from liability as the threshold issue in a suit against the officer in his personal capacity.

*Cameron*, supra at 124. But, nothing in that passage, or elsewhere in *Cameron*, overrules *Turner* and authorizes a direct appeal instead of requiring that the statutory framework governing interlocutory appeals be followed. Rather, the above passage from *Cameron* is merely in keeping with this Court's recommendation in *Turner* that "except in clear cases, the trial courts issue a certificate of immediate review under OCGA § 5–6–34 (b) for interlocutory orders denying dismissal or judgment on the basis of qualified immunity. [Cit.]" Supra at 813-814. Both are simply statements of the best policy for trial courts to pursue when faced with a case that raises some defense of immunity; courts should address motions on immunity issues as early as practicable and, if there is any substantial question, permit an interlocutory appeal to proceed.[6] And, the admonitions in *Turner* and *Cameron* are consistent with this Court's recognition that, regarding the interlocutory appellate procedures, the General Assembly did

---

[6] OCGA § 5-6-34 (b) provides an expeditious procedure; a certificate of immediate review must be secured within ten days of the order complained of, an interlocutory application to the appropriate appellate court must be made within ten days of the certificate being granted, and the appellate court then renders a decision regarding the application within 45 days.

not intend for parties to usurp the trial courts' authority to regulate litigation. *Scruggs v. Georgia Dept. of Human Res.*, 260 Ga. 587, 588-589 (1) (408 SE2d 103) (1991). See also *Waldrip v. Head*, 272 Ga. 572, 575 (1) (532 SE2d 380) (2000). Further, we note that trial courts possess broad discretion to

> enter protective orders governing discovery, see OCGA § 9–11–26 (c), to control the sequence and timing of discovery, see OCGA § 9–11–26 (d), and to establish pretrial procedure, see OCGA § 9–11–16 (a) (5), to focus discovery initially on the [relevant] issue. . . .

*Austin v. Clark*, 294 Ga. 773, 776-777 (755 SE2d 796) (2014) (Nahmias, J., concurring) (Footnotes and citation omitted.) Moreover, a defendant asserting an immunity defense may move to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), on consideration of which, the trial court may hear evidence and make relevant factual findings to decide the threshold issue. See *Department of Trans. v. Dupree*, 256 Ga. App. 668, 671-675 (1) (a), (b) (570 SE2d 668) (2002). See also *Considine v. Murphy*, 297 Ga. 164, 167 (n. 2) (773 SE2d 176) (2015).

The scheme for appellate interlocutory review is legislative in nature, and provides ample opportunity for review in appropriate cases when a defense of immunity is raised. In the event that the General Assembly determines that the

13

established framework does not adequately safeguard the interests of those who assert those defenses, it is for that body to change it. Accordingly, we hereby overrule *Canas*, supra, to the extent that it applied the collateral order doctrine to the immunity claim therein.[7]

---

[7] Further, the Court of Appeals has, in multiple cases, relied upon *Canas*, or its progeny, as authority to apply the collateral order doctrine in cases claiming sovereign, official, qualified, or other immunity. Such cases include the following, which together with any other cases that hold contrary to this opinion, are hereby overruled: *Georgia Dept. of Community. Health v. Neal*, 334 Ga. App. 851 (780 SE2d 475) (2015); *Postell v. Anderson*, 334 Ga. App. 331 (779 SE2d 397) (2015); *Vidal v. Leavell*, 333 Ga. App. 159 (775 SE2d 633) (2015); *Tattnall County v. Armstrong*, 333 Ga. App. 46 (775 SE2d 573) (2015); *Cooley v. Bryant*, 331 Ga. App. 718 (771 SE2d 411) (2015); *Board of Regents &c. of Ga. v. Winter*, 331 Ga. App. 528 (771 SE2d 201) (2015); *Effingham County v. Roach*, 329 Ga. App. 805 (764 SE2d 600) (2014); *Georgia Dept. of Trans. v. Jarvie*, 329 Ga. App. 681 (766 SE2d 94) (2014); *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422 (762 SE2d 136) (2014); *Eshleman v. Key*, 326 Ga. App. 883 (755 SE2d 926) (2014) (reversed on other grounds, *Eshleman v. Key*, 297 Ga. 364 (774 SE2d 96) (2015)); *City of Atlanta v. Shavers*, 326 Ga. App. 95 (756 SE2d 204) (2014); *Taylor v. Campbell*, 320 Ga. App. 362 (739 SE2d 801) (2013); *DeKalb County School Dist. v. Gold*, 318 Ga. App. 633 (734 SE2d 466) (2012); *Fulton County v. Colon*, 316 Ga. App. 883 (730 SE2d 599) (2012) (reversed on other grounds, *Colon v. Fulton County*, 294 Ga. 93 (75 SE2d 307) (2013); *Georgia Dept. of Trans. v. Crooms*, 316 Ga. App. 536 (729 SE2d 660) (2012); *Board of Regents &c. of Ga. v. Ruff*, 315 Ga. App. 452 (726 SE2d 451) (2012); *Georgia Dept. of Trans. v. Smith*, 314 Ga. App. 412 (724 SE2d 430) (2012); *Georgia Dept. of Corrections v. James*, 312 Ga. App. 190 (718 SE2d 55) (2011); and, *Hendricks v. Dupree*, 311 Ga. App. 96 (714 SE2d 739) (2011).

Although the Court of Appeals applied incorrect analyses in these cases, it reached the correct results in dismissing the direct appeals filed by Rivera and Forsyth County, and thus we affirm that Court's judgments.

Judgments affirmed. All the Justices concur.