**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 24, 2025**

# In the Court of Appeals of Georgia

A25A1205. IN RE ESTATE OF TRAVIS.

BARNES, Presiding Judge.

A probate court granted a brother's request that he be reinstated as the co-executor of his father's estate after he had previously renounced that office in writing. On appeal from that judgment, the brother's sister, now sole executor, argues that the probate court erred because the relevant statute, OCGA § 53-6-12, allows a nominated executor who has declined the office to qualify at a later time only "to fill a vacancy," which never occurred here. We agree and reverse.

OCGA § 15-9-30 (a) (2) provides that "[p]robate courts have authority, unless otherwise provided by law, to exercise original, exclusive, and general jurisdiction" over matters including "[t]he granting of letters testamentary and of administration

and the repeal or revocation of the same." "Generally, a probate court has broad discretion in the disqualifying of a named executor." *In Re Estate of Farkas*, 325 Ga. App. 477, 478 (2) (753 SE2d 137) (2013); see also OCGA § 53-7-55 (a) (authorizing a probate court, whether on petition or for "good cause," "to revoke the letters of a personal representative or impose other sanctions")."We review a probate court's determination regarding whether one is fit to serve as an executor for an abuse of discretion." Id.

Thus viewed in favor of the probate court's judgment, the record shows that Emory Travis, a widower, died on March 1, 2024. On June 10, 2024, Donna Lisa Butler ("Lisa"), the decedent's daughter, filed a petition to probate the decedent's will in solemn form. The will left the family house to the decedent's son, David Troy Travis ("Troy"), and nominated Lisa and Troy to serve as co-executors. In addition to the will, Lisa's petition attached Troy's written renunciation of his nomination. Troy also agreed in writing to the immediate admission of the will into probate. The will was admitted to probate that morning, and Lisa was issued letters testamentary the following day.

In September 2024, Lisa entered into a contract to sell the family home. According to Troy, Lisa told him that they would split the proceeds of the house sale "fifty-fifty" even though the will gave the house to Troy outright. Troy filed objections with the probate court, asking to revoke his renunciation and to be named co-executor. After a hearing, a transcript of which is not included in the appellate record, the probate court stayed the house sale and asked for briefing on the issue of Troy's revocation of his renunciation. In what it called a "final order," the probate court then held that OCGA § 53-6-12 "allows a nominated executor to decline in writing the right to serve an executor but does not preclude the nominated executor from qualifying at a later time to serve as executor." The court therefore authorized Troy to take his oath as executor.

On appeal from this judgment, Lisa argues that Troy cannot serve as executor because the office was never vacant, which is a precondition for a previously excused executor for returning to that office. For his part, Troy argues that we lack jurisdiction over the appeal because the probate court failed to issue a certificate of immediate review concerning its order.

1. We first inquire into our own jurisdiction.

OCGA § 5-6-34 governs what trial court orders may be reviewed immediately by an appellate court. Specifically, subsection (a) of the statute lists the trial court judgments and orders that may be appealed immediately. This list includes all final judgments where the case is no longer pending in the court below [except as provided in OCGA § 5-6-35].

(Citation and punctuation omitted.) *Duke v. State*, 306 Ga. 171, 172 (1) (829 SE2d 348) (2019). The list in OCGA § 5-6-34 (a) includes "specific types of trial court rulings that the General Assembly has deemed important enough to the case, or dispositive enough of the case, to warrant an immediate appeal, even though such rulings are often interlocutory rather than final judgments." (Citation and punctuation omitted.) *Rivera v. Washington*, 298 Ga. 770, 773 (784 SE2d 775) (2016).

As a complement to the provision of OCGA § 5-6-34 (a) (9), which authorizes a direct appeal from "[a]ll judgments or orders sustaining motions to dismiss a caveat to the probate of a will," this Court has long held that an order granting a petition to probate a will and appointing an executor is a final and appealable judgment. See *In Re Estate of Martin*, — Ga. App. —, — (1) (918 SE2d 453) (2025) (an order admitting a will to probate and issuing letters testamentary was a final judgment); *In re Estate of Jeffcoat*, 361 Ga. App. 828, 829 (1) (865 SE2d 661) (2021) (addressing whether a

4

probate court erred in appointing a county administrator rather than the nominated person as the executor of a will); *In re Estate of Zeigler*, 273 Ga. App. 269, 269 (614 SE2d 799) (2005) (addressing whether a probate court erred in removing an executor and in requiring her to post a bond); *McConnell v. Moore*, 232 Ga. App. 700, 702 (503 SE2d 593) (1998) (an order admitting a will to probate and appointing an executor was a final order); *Dismer v. Luke*, 228 Ga.App. 638, 639 (1) (492 SE2d 562) (1997) (order granting petition to probate will and admitting the will to probate which implicitly denied the caveat was a final judgment). Compare *In re Bruni*, 369 Ga. App. 488, 492 (7) (893 SE2d 862) (2023) (dismissing appeal from order appointing an emergency conservator as "not collateral to the [underlying] action for the appointment of a conservator"); *In re Estate of Reece*, 360 Ga. App. 364, 365-366 (861 SE2d 169) (2021) (an order resolving an estate's motion to approve attorney fees was not a final order for purposes of OCGA § 5-6-34 (a) because the administration of the estate was not complete).

Here, as in many probate cases, the issue of the executorship looms large over the estate's disposition. Troy has suggested, for example, that Lisa, now sole executor, is moving forward to evict him from the family home, with Troy seeking to prevent

that result by rescinding his declination. Whatever the ultimate outcome here, we hold

that orders such as the one before us, which involves the appointment or removal of

an executor, are final and appealable judgments for purposes of OCGA § 5-6-34 (a).

2. On the merits, we begin with the text of OCGA § 53-6-12:

A nominated executor may decline in writing the right to serve as executor, but this shall not preclude the nominated executor from qualifying at a later time to serve as executor or administrator with the will annexed *to fill a vacancy*.[1]

(Emphasis supplied.) OCGA § 53-6-12 replaced the former OCGA § 53-6-71, which

barred any recantation of a renunciation,[2] and the new statute envisions circumstances

where a renunciation can be undone. But "[w]here the language of a statute is plain

and unambiguous, judicial construction is not only unnecessary but forbidden." *Six*

*Flags Over Georgia v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

---

[1] OCGA § 53-1-2 (2) defines an "[a]dministrator with the will annexed" as "any person, other than an executor, appointed and qualified to administer a testate estate, including a testate estate already partially administered and from any cause unrepresented."

[2] Former OCGA § 53-6-71 provided that a person who renounces a right to serve as executrix "may not afterwards relieve himself from the effect of renunciation."

6

It is undisputed that Lisa was named sole executor in accordance with Troy's written renunciation and that she never abandoned or was forced out of that office. In the statute's terms, then, no "vacancy" in that office occurred at any time after the renunciation, with the result that the probate court was not authorized to qualify Troy "at a later time." OCGA § 53-6-12.

Given that the office of executor has never been vacant, Troy's only recourse in light of his renunciation and the plain terms of OCGA § 53-6-12 was to petition to remove Lisa as co-executor, as (for example) on the ground that when she induced him to renounce his nomination, she ignored the plain terms of the will, which left the house to him outright. The fact remains, however, that Troy could become executor only if that office became vacant, whether by action of the probate court or some other circumstance. Unless and until such a "vacancy" occurs, Troy's renunciation of his right to be co-executor must remain in effect. Nor does the absence of a transcript change this result, where an undisputed fact – here, Lisa's uninterrupted status as executor – was ignored by the probate court. See *State v. Franklin*, 318 Ga. 39, 39 (1) (897 SE2d 432) (2024) (where some or all of the material facts are undisputed, a reviewing court may "properly take notice of the undisputed facts – even if the trial

court did not – without interfering with the prerogative of the trial court to resolve disputes of material fact") (citation and punctuation omitted).

Because Troy is not currently entitled to assume the office of co-executor, we reverse the order of the probate court authorizing him to take the oath of that office.

*Judgment reversed. Brown, C. J., and Watkins, J., concur.*